**In the Matter of John E. HOPPA, Debtor.**

**William J. ORDMANN, Jr., Individually and as Personal Representative of the Estates of Nancy J. Ordmann and Jennafer M. Ordmann, Plaintiff,**

v.

**John E. HOPPA, d/b/a John E. Hoppa Trucking, Inc., Defendant.**

**Bankruptcy No. 82–00915.**
**Adv. No. 82–0753.**

United States Bankruptcy Court, E.D. Wisconsin.

June 20, 1983.

Richard F. Lindstrom, Denny, Yanisch & Binder, Milwaukee, Wis., for plaintiff.

Thomas F. Fahl, Milwaukee, Wis., for defendant.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

William J. Ordmann, Jr. ("Ordmann"), individually and as Personal Representative of the estates of his wife Nancy Ordmann and daughter Jennafer Ordmann, filed a complaint on June 23, 1982 against the defendant-debtor John Hoppa ("Hoppa") seeking a determination that his claims against Hoppa are nondischargeable in bankruptcy. Hoppa had filed a petition in bankruptcy on March 30, 1982. The basis for claiming nondischargeability is § 523(a)(6) of the Code which states:

> "A discharge under s. 727—of this title does not discharge an individual debtor from any debt—
>
>> (2) for willful and malicious injury by debtor to another entity or to the property of another entity...."

Hoppa filed a responsive pleading which included a motion for dismissal. An eviden-

tiary hearing was conducted before this Court on April 12 and 13, 1983.

The testimony has established that on the afternoon of July 16, 1981, a 1978 tractor-trailer Ford truck leased and used by Hoppa in the operation of his trucking business was involved in a fatal traffic collision in Menomonee Falls, Wisconsin. At the time of this collision, the truck had been operated by Ronald Tatrow, one of Hoppa's employees. Tatrow, while proceeding east, entered an intersection against a red light and struck a northbound automobile in the intersection. The northbound automobile had been operated by Ordmann's wife. Both Mrs. Ordmann and her daughter, Jennafer, who was a passenger, were killed. After the collision, an examination of the truck revealed that the brakes on the trailer had been "out of adjustment" and that the brakes on the front wheels of the tractor had been disconnected prior to the collision. The testimony further established that Tatrow at the time of this fatality, had neither a driver's license nor a chauffeur's license. Hoppa did acknowledge that he had been informed by Tatrow that he did not have these licenses. However, Hoppa stated he did not believe it was necessary for Tatrow to have a chauffeur's license and also that Tatrow informed him, when he was hired, that Tatrow's license would be restored at such time as proof of insurance was submitted to the State licensing authorities. Tatrow later informed Hoppa, after he was hired but before the collision, that the insurance had been obtained and that his driver's license had been restored. However, Hoppa did not verify this with the State licensing authorities.

It was alleged in the complaint that Hoppa "willfully and maliciously used on a public highway a truck that was in a grossly defective condition and used by an unli-censed and untrained driver to operate the truck".

The sole issue before this Court is whether or not the claims of Ordmann should be declared nondischargeable within the meaning of § 523(a)(6) of the Bankruptcy Code.[1] A consideration of the legislative history of this particular Code provision is therefore pertinent in arriving at an understanding of its underlying intent. The Committee Report of the United States House of Representatives provides as follows:

"Paragraph 6 excepts debts for willful and malicious injury by the debtor to another person or to the property of another person. Under this paragraph 'willful' means deliberate or intentional to the extent that *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 49 [48] L.Ed. 754 (1902), held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a 'reckless disregard' standard, they are overruled."

From this legislative history, it is clear that "willful" requires a finding of deliberate action on the part of the debtor. Bankruptcy courts, when confronted with this situation, have generally recognized this legislative intent. In *Matter of Naser*, 7 B.R. 116 (Bkrtcy.W.D.Wis.1980), the debtor, while intoxicated, failed to stop for a stop sign and collided with another automobile in which three passengers were killed. The court refused to declare plaintiffs' claims as nondischargeable under § 523(a)(6), relying upon the above quoted legislative history. After consideration of the facts before it, the court concluded that there was no evidence in the record to establish that the defendant-debtor intended to injure anyone and, therefore, his conduct could not be construed as "willful and malicious" within the meaning of § 523(a)(6). Other bank-

1. At the outset of this hearing, the parties stipulated that any determination made by this Court shall not be binding upon or utilized in the negligence claim which is currently pending in the Circuit Court for Waukesha County Wisconsin and which had been initiated by Ordmann against Hoppa, his insurance carrier and other named defendants. It was further stipulated, in connection with the separate claim by Ordmann against Hoppa for punitive damages arising out of alleged willful misconduct, that any determination made by this Court shall only be binding on the issue of dischargeability; for any other purposes it may be considered by the State Court and given such weight as that Court may deem appropriate.

ruptcy decisions in Wisconsin have also adhered to this test. *See, In re Ries,* 22 B.R. 343 (Bkrtcy.W.D.Wis.1982); *In re Grace,* 22 B.R. 653 (Bkrtcy.E.D.Wis.1982). Plaintiffs' attempt to use the *Grace* case as authority for its position in the case at bar is misplaced. In *Grace,* unlike the instant case, there was no serious issue as to the meaning of the term "willful". In that case, the parties fully recognized that Grace's actions were willful. What was in issue was the meaning of "malicious". In *Grace,* this Court concluded that the pre-Code *Tinker* common law definition of "malicious" (namely, willful and without just cause or excuse) remained intact after the enactment of § 523(a)(6). This Court in *Grace* added that the pre-Code *Tinker* common law definition for "willful" (namely, reckless disregard), established a looser standard and was overruled by the Code which required a more rigid standard of deliberate or intentional misconduct. For Hoppa's conduct to have been "willful", it was encumbent upon plaintiff to prove that Hoppa deliberately sought to have his employee, Tatrow, drive the truck into the vehicle being operated by Mrs. Ordmann. Such a finding was not established. The overwhelming weight of testimony establishes for purposes of these proceedings that the cause of the accident was the defective condition of the trailer brakes and the fact that the front axel tractor brakes had been disconnected. These factors present questions of negligence and degree of negligence. In no event, however, under these circumstances could the defendant's conduct be construed as willful and malicious within the meaning of § 523(a)(6) of the Bankruptcy Code.

Generally, bankruptcy decisions, when confronted with this issue, involved intoxicated debtor-drivers. A majority of these decisions held these types of claims to be dischargeable. It is because of this that there is now pending in Congress legislation aimed at specifically declaring drunk driving debts nondischargeable. *See* proposed *Omnibus Bankruptcy Improvements Act of 1983* (S. 445), Senate Report 98–65, 98th Cong., 1st Sess. (1983) at page 43:

> "Under present law, a debt that is the result of a tortious act—such as a judgment against a debtor as a result of an automobile accident—is nondischargeable only if the debt is the result of a 'willful and malicious' injury to the property or person of another.
>
> In most states, an injury resulting from an act of drunk driving will support a finding only of negligence on the part of the driver. Thus, more often than not, the debt is discharged—unless the bankruptcy court finds that the act of drunk driving was a willful and malicious act by the nature of the circumstances surrounding it."

In the instant case—where drunk driving was not involved and where the debtor was not even the driver but only the employer of the driver—an even stronger set of facts exists to support the holding that such an obligation under existing law be held dischargeable. Regardless of this Court's personal view, it is a Court's function to interpret a statute and not to rewrite it. In *In re Ankowiak,* 9 B.R. 746, 747, (Bkrtcy.N.D. Ill.E.D.1981) Judge Eisen states:

> "This court's sympathy for the plaintiff's situation cannot permit this court to ignore the clear and unambiguous terms of section 523(a)(6) and the corresponding legislative history."

*See also, In re Burrell,* 25 B.R. 717, 721 (Dist.Ct.N.D.Cal.1982) and *In re Bratcher,* 20 B.R. 547, 549 (Bkrtcy.W.D.Okla.1982). If the law is to be changed, it is for Congress to do so.

While this Court fully recognizes the tragic circumstances before it, for the foregoing reasons, the complaint is hereby dismissed, but without costs.

This decision shall stand as and for findings of fact and conclusions of law in accordance with Rule 752 of the Federal Rules of Bankruptcy Procedure.