In re James Phillip AUSTIN, Ind. & d/b/a a partner in the partnership Main Street Music Emporium, and Benjamin Snell Austin, Ind. & d/b/a a partner in the partnership Main Street Music Emporium, Debtors.

Russell THATCHER and Cleda Thatcher, as parents and next of kin of Stacey Lee Thatcher, deceased, Plaintiffs,

v.

James Phillip AUSTIN, Ind. & d/b/a a partner in the partnership Main Street Music Emporium, and Benjamin Snell Austin, Ind. & d/b/a a partner in the partnership Main Street Music Emporium, Defendants.

Bankruptcy Nos. 382–02882, 382–02895. Adv. Nos. 382–0744, 382–0743.

United States Bankruptcy Court, M.D. Tennessee.

Jan. 9, 1984.

Ken Burger, Murfreesboro, Tenn., for defendants.

Thomas J. Haynes, Murfreesboro, Tenn., for plaintiffs.

## MEMORANDUM

KEITH M. LUNDIN, Bankruptcy Judge.

The questions presented are: (1) whether negligent conduct is "willful" for purposes of § 523(a)(6) analysis; and (2) whether concepts of vicarious or imputed liability can support a claim of nondischargeability under 11 U.S.C.A. § 523(a)(6) where the debtor/defendant is the promoter of a rock concert and the creditor/plaintiff is the next of kin of a pedestrian killed by a drunk concert-patron. After consideration of the testimony, briefs and arguments of the parties, and applicable authority, the court concludes that the debts at issue are DISCHARGEABLE.

The following constitute findings of fact and conclusions of law as required by Rule 7052 of the Bankruptcy Rules.

During September of 1981, Phillip Austin, a Murfreesboro Tennessee entrepreneur, organized an outdoor rock concert in rural Rutherford County, Tennessee advertised as "Cow Jam II." For a $6.00 admission charge, persons were entitled to attend the concert and consume unrestricted amounts of "free beer." Beer was supplied by A & C Distributing Company ("A & C"). William P. Shaw ("Shaw"), J.P. Moynton ("Moynton"), and Gary Wayne Mandesbach ("Mandesbach") were the A & C employees responsible for distributing the beer.

William J. Craig ("Craig"), a 17-year-old Nashville, Tennessee maintenance worker and cook drove to the concert accompanied by his 19-year-old friend, Michael Thomasson ("Thomasson"). Craig and Thomasson purchased and consumed at least one six pack of beer during the trip. Craig testified that at the concert he may have had as many as "40 cups" of beer, although his memory of that night is understandably clouded.

After the concert, Craig and Thomasson were returning to Nashville when the car driven by Craig struck and killed a pedestrian, Stacey Lee Thatcher ("Thatcher") who

was also leaving the concert. Thatcher's parents filed a lawsuit in state court against William Craig, Joseph Craig (William's father and the purported owner of the automobile), Thomasson, Phillip Austin and Ben Austin, individually and d/b/a Main Street Music Emporium, Ricky Lee, a musician and alleged co-promoter of the concert, Shaw, Mandesbach, and Moynton, individually and as agents of A & C, and A & C, alleging various tortious acts and statutory violations. The state court case is in discovery.[1]

On September 8, 1982, Phillip Austin and Ben Austin filed Chapter 7 petitions. Each scheduled Thatcher's estate as holding an unliquidated, disputed tort claim. The Thatchers filed a complaint objecting to dischargeability of the debts on November 3, 1982. A trial was conducted September 1, 1983.

The Thatchers allege that their son's death was a "willful and malicious" injury by the debtors and that any damages assessed against the debtors should be excepted from discharge. 11 U.S.C.A. § 523(a)(6) (West 1979) provides that:

> (a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual from any debt—
>
> \* \* \* \* \* \*
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

Exceptions to discharge, including § 523(a)(6), are strictly construed in favor

of the debtor. *Gleason v. Thaw,* 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915). The plaintiff bears the burdens of proof. *Heinold Commodities & Securities, Inc. v. Hunt,* 30 B.R. 425, 436 (Bkrtcy.M.D. Tenn.1983). *See also Household Finance Corp. v. Danns,* 558 F.2d 114, 116 (2d Cir. 1977); *Public Finance Corp. v. Taylor,* 514 F.2d 1370 (9th Cir.1975).

The plaintiffs make many arguments in support of two basic theories: (1) that the Austins' failure to prevent minors from consuming alcohol at "Cow Jam II" constituted "willful and malicious" conduct; (2) that Craig and/or A & C engaged in "willful and malicious" conduct which may be imputed to the debtors.

## I. "WILLFUL" INJURY BY DEBTORS

The plaintiffs allege that the defendants'[2] failure to prevent William Craig, a minor, from consuming beer was a "willful and malicious" injury. The legislative history accompanying § 523(a)(6) indicates that a debt is nondischargeable only if the debtor has performed some intentional or deliberate act that causes injury:[3]

> Under this paragraph "willful" means deliberate or intentional. To the extent that *Tinker v. Colwell,* 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) [sic] held that a looser standard is intended, and to the extent that other cases have relied on *Tinker* to apply a "reckless disregard" standard, they are overruled.

---

1. On January 11, 1983, Craig pleaded guilty to driving under the influence of alcohol and received a 90-day jail sentence. Craig also plead guilty to vehicular homicide, received a five year jail sentence and was ordered to pay $7,500 restitution to the Thatcher family.

2. The relationship between this proceeding and Ben Austin and Main Street Music Emporium is not clear. The plaintiffs offered no proof that Ben Austin had any link to the organization or promotion of "Cow Jam II." The undisputed testimony is that Ben Austin was unaware of the concert. His only link to the case is as a partner in Main Street Music Emporium. Phillip Austin testified that "Cow Jam II" was purely a personal venture and that there was no link between "Cow Jam II" and either Ben

Austin or Main Street Music Emporium. (Deposition of Phillip Austin, Exhibit No. 7, page 32).

3. We are here discussing only the "willful" portion of the "willful and malicious injury" proscribed by § 523(a)(6). Because no willfully act causing injury has been proven, it is unnecessary to examine the requirement of "malicious" injury. *See, e.g., United Bank v. Nelson,* 35 B.R. 766, 11 B.C.D. (CRR) 159 (D.C. N.D.Ill.1983) (after careful consideration of *Tinker,* the legislative history of § 523(a)(6) and the applicable decisions, the court concludes that "implied or constructive malice" will support a § 523(a)(6) complaint once a deliberate and intentional act causing injury is established).

S.REP. NO. 989, 95th Cong., 2d Sess. 79 (1978); H.R.REP. 595, 95th CONG., 1st Sess. 365 (1977), U.S.CODE CONG.AD. NEWS 1978, 5787, 6320. *See Ordmann v. Hoppa,* 31 B.R. 753, 754 (Bkrtcy.E.D.Wis. 1983). The death of Stacey Lee Thatcher was a tragedy. However, the record is void of any evidence that the debtors deliberately or intentionally served beer to Craig or caused Craig to become drunk and to effect an injury. The plaintiffs proffered no evidence that the debtors had knowledge that minors were being served beer or that they intended to allow minors to consume beer. The unrebutted testimony is that Phillip Austin took steps, albeit apparently unsuccessful steps, to prevent minors from drinking beer. Austin requested police security and when it was refused, hired friends to act as security personnel, collect tickets, and check identification. (Exhibit No. 7, page 20). The only deliberate acts committed by Phillip Austin were organizing the concert and procuring a beer distributor. This was not a "willful" injury to plaintiff as contemplated by § 523(a)(6).

■ The plaintiffs argue that because the sale of alcohol to a minor is prohibited by state law and is subject to civil and criminal sanctions, the debts evolving from such conduct should be nondischargeable. Plaintiffs' rely on *Brookins v. The Roundtable, Inc.,* 624 S.W.2d 547 (Tenn.1981) in which the Tennessee Supreme Court recognized that violation of the statutory prohibition of alcohol sales to minors constitutes *negligence per se.* It is well-settled in this district, however, that an injury resulting from negligence is not "willful" within the meaning of § 523(a)(6) even if the negligence is alleged to be gross, reckless or wanton. *Farmers Bank v. McCloud,* 7 B.R. 819, 825 (Bkrtcy.M.D.Tenn.1980). *See also In re Chase,* 28 B.R. 814, 818 (Bkrtcy.D.Md. 1983); *Clair v. Oakes,* 24 B.R. 766, 769 (Bkrtcy.N.D.Ohio 1982); *Edge v. Simmons,*

17 B.R. 259 (Bkrtcy.N.D.Ga.1982). As Judge Hippe of this court has explained:

It is clear . . . that the Congress intended to overrule those decisions that had construed *Tinker* to permit conduct in "reckless disregard" or with "reckless indifference" to the rights of another and even "gross negligence" to come within the definition of a willful act.

*Farmers Bank v. McCloud,* 7 B.R. at 825.[4] In *Castiglia v. Morgan,* 22 B.R. 38, 39 (Bkrtcy.D.Neb.1982), the court reasoned as follows:

To suggest that there is a degree of negligence which is so gross that the conduct can be equated with "willful and malicious injury" seems strained. An increase in the degree of gross negligence only increases the probability of resulting injury. It does not make the injury a "willful injury" and a "malicious injury." In terms of the present case, a drinking driver clearly intends the act of driving, but there is no evidence before me to suggest that he intended the injury.

The United States Court of Appeals for the Fifth Circuit has recently agreed that negligence alone will not support a § 523(a)(6) complaint in *Kelt v. Quezada,* 718 F.2d 121 (5th Cir.1983). Holding first that "Congress expressly intended to overrule legislatively the reckless disregard test for nondischargeability," the court found that a state court judgment for injuries inflicted by the debtors' bulldog was dischargeable:

Under the present facts, no debt for "willful and malicious injury by the debtor", Section 523(a)(6), is shown. The debtors Quezadas' intentional harboring of the vicious pit bulldog within their fence is not shown to be conduct intentionally exposing others to harm by the vicious dog. The negligence of the debtors in permitting the dog to escape when they opened the gate is not shown to be

---

**4.** Some other courts have held that the "reckless disregard" standard continues to be operative under the Bankruptcy Code. *See, e.g., Credithrift of America v. Auvenshine,* 9 B.R. 772, 775 (Bkrtcy.W.D.Mich.1981); *Brawner v. Askew,* 22 B.R. 641, 643 (Bkrtcy.M.D.Ga.1982);

*Rines v. Harris,* 18 B.R. 666, 669 (Bkrtcy.M.D. Ga.1982). The conflict among the decisions is reviewed and to some extent reconciled in *United Bank v. Nelson,* 35 B.R. 766, 11 B.C.D. (CRR) 159 (N.D.Ill.1983).

conduct designed to cause deliberate or intentional injury.

718 F.2d at 123.

By fixing an elevated dischargeability standard of willfulness, Congress consciously differentiated between intentional conduct and even the highest degrees of negligence under state law. The failure to prevent Craig from drinking is not shown to be a willful act by the debtors.

## II. VICARIOUS OR IMPUTED LIABILITY

Plaintiffs argue that Craig's drunken driving was a "willful and malicious" act that should be imputed to the Austins. In the alternative, plaintiffs' claim that A & C "willfully and maliciously" violated various

state laws regulating distribution of beer and these acts should be imputed to the debtors. The court rejects both of these contentions.

Plaintiffs' argument that Craig and/or A & C violated various state statutes [5] and that these violations evidence "willful and malicious" conduct by the debtors is rejected for two reasons. Firstly, even if imputable to debtors, the violation of a state statute by Craig and/or A & C may establish negligence, but for the reasons discussed above, negligence is insufficient to support a complaint for nondischargeability under § 523(a)(6) of the Bankruptcy Code. Secondly, even if the conduct of Craig or A & C were characterized as "willful and malicious," [6] neither Craig's conduct nor that

---

**5.** Plaintiffs allege violations of several statutes by A & C including TENN.CODE ANN. § 57–5–301(a) and (c) (sale of alcohol to minors); TENN.CODE ANN. § 57–5–104 (dealer registration); TENN.CODE ANN. § 57–5–105 (sale outside of city limits); TENN.CODE ANN. § 57–5–402 (unauthorized change of place or delivery); TENN.CODE ANN. § 57–5–406(c) (accepting beer with false shipping labels); and TENN.CODE ANN. § 57–5–409(b) (beer subject to confiscation). The violation of any or all of these statutes is a misdemeanor subject to a fine and imprisonment of between 30 days and six months. The court does not adjudge the guilt or innocence of A & C nor any of its employees with regard to these statutes.

**6.** The parties stipulated: "The said acts of driving while intoxicated are '*malum in se*' under Tennessee law and are considered malacious (sic), willful and wanton under 11 U.S.C. § 523(a)(6) of the Bankruptcy Code." This court makes no specific finding regarding the legal ramifications of Craig's conduct under state law. Craig is not in bankruptcy. The scope of this court's analysis is limited to applying federal dischargeability standards to bankruptcy cases. This court has previously held that injuries occurring from drunken driving are not ordinarily "willful and malicious" under § 523(a)(6). *See Phillips v. Rambo,* 5 BANKR.CT.DEC. (CRR) 800 (Bkrtcy.M.D.Tenn. 1979). Other courts have agreed that injuries incurred as a result of drunken driving are dischargeable under the Bankruptcy Code. *See, e.g., Alabama Farm Bureau Mutual Casualty Insurance Co. v. Brown,* 18 B.R. 591 (Bkrtcy.N.D.Ala.1982); *Clair v. Oakes,* 24 B.R. 766, 770 (Bkrtcy.N.D.Ohio 1982); *Williams v. Bryson,* 3 B.R. 593, 596 (Bkrtcy.N.D.Ill.1980); *Johnson v. Kriger,* 2 B.R. 19 (Bkrtcy.D.Or.

1979); *Security Mutual Casualty Co. v. Rainey,* 1 B.R. 569 (Bkrtcy.D.Or.1979). *See, contra, Long v. Greenwell,* 21 B.R. 419, 420 (D.C.S.D. Ohio 1982); *Prosch v. Wooten,* 30 B.R. 357, 359 (Bkrtcy.N.D.Ala.1983); *Tobler v. Carey (In re Carey),* 35 B.R. 894 (Bkrtcy.E.D.Tenn.1983). Judge Hippe expressed the sentiment appropriately in *Rambo:*

> That human beings can so flagrantly injure or destroy themselves, their loved ones, or the small children of innocent, third parties through the abuse of alcohol is sickening, and outrageous conduct for which the law rightfully holds them liable under the theories of negligence.

*Phillips v. Rambo,* 5 BANKR.CT.DEC. (CRR) at 801. Judge Hippe continued, however, that:

> The policies of bankruptcy law differ significantly from those of negligence law, however. To give the financially strapped bankrupt his fresh start in life unhampered by pre-existing debt, the Congress has made a considered, deliberate policy choice restated in the legislative history of the new Code; that only judgment debts resulting from deliberate or intentional torts may not be discharged in bankruptcy.

*Phillips v. Rambo,* 5 BANKR.CT.DEC. (CRR) at 801. Considerable debate has arisen regarding bankruptcy cases allowing the discharge of drunk driving debts. Congressional recognition of a dischargeability "loophole" has spawned proposed legislation specifically aimed at declaring drunk driving debts nondischargeable. *See* Omnibus Bankruptcy Improvements Act of 1983, S.REP. 65, 98th Cong., 1st Sess. (1983). Senator DeConcini has observed:

> What disturbs me more than anything else, Mr. President, quite frankly, is that I have an amendment that would change the standard

of A & C can be "imputed" to the debtors for § 523(a)(6) purposes.

Vicarious liability is a tort concept finding its genesis in agency and master-servant cases. The concept of "vicarious liability" or "imputed liability" developed at early common law. The financial consequences of the torts of servants, slaves, wives, and even inanimate objects were borne by their masters or owners. The English courts, however, quickly moved away from vicarious liability. By the 16th Century, it was generally recognized that a master should not be liable for his servants' torts unless he had actually and specifically commanded the particular act. *See generally* Wigmore, Responsibility for Tortious Acts: Its History, 7 HARV.L.REV. 315 (1894); 2 Holdsworth, HISTORY OF ENGLISH LAW, 46 (4th Ed.1936). After 1700, the English courts found the absence of upstream liability unsatisfactory as accidental injury was increased by the growth of commercial activity and the Industrial Revolution. The courts reverted to the concept of vicarious liability, first under the fiction of a command implied from the employment relationship and finally by completely abandoning the fiction in favor of the modern concept of vicarious liability. *See Hern v. Nichols,* 1 Salk 289, 91 Eng.Rep. 256 (1708); *Brucker v. Fromont,* 5 Term.Rep. 659, 101 Eng.Rep. 758 (1796).

The concept of vicarious liability was adopted from the English common law by courts in the United States. The United States Supreme Court has noted that "few doctrines of the law are more firmly established or more in harmony with accepted notions of social policy than that of the liability of the principal without fault of his own." *Gleason v. Seaboard Air Line Railway Co.,* 278 U.S. 349, 356, 49 S.Ct. 161, 162–163, 73 L.Ed. 415 (1929). Several reasons have been proffered for the development of vicarious liability: (1) that the master has "control" over the behavior of his servant; (2) that the master initiated the enterprise and therefore should assume responsibility; (3) that the master selected the servant and should bear responsibility for his actions; and (4) that the master has the only "deep pocket." *See* Baty, The Basis of Responsibility, 32 JURIS.REV. 159 (1920); James, Vicarious Liability, 28 TUL. L.REV. 161 (1954). The most plausible justification is that vicarious liability is a necessary social policy that promotes a favorable and equitable allocation of risk of loss: the master is able to distribute any loss in the ordinary course of business through prices and/or insurance and so shift the costs away from the innocent plaintiff to the community at large. *See* Ferson, Bases for Master's Liability and for Principals Liability to Third Persons, 4 VAND.L.REV. 260 (1951); Douglas, Vicarious Liability and Administration of Risk, 38 YALE L.J. 584 (1929); Laski, Basis of Vicarious Liability, 26 YALE L.J. 105 (1916). *See also Carroll v. Beard-Laney, Inc.,* 207 S.C. 339, 35 S.E.2d 425 (1945); *Kohlman v. Hyland,* 54 N.D. 710, 210 N.W. 643 (1926).

■ There is nothing in the language or the legislative history of § 523(a)(6) to suggest that common law notions of vicarious

---

and would not permit discharge in bankruptcy of obligations arising from the infliction of willful, wanton, or reckless injury. Today there exists in the bankruptcy statute an unconscionable loophole which makes it possible for drunk drivers or others who have acted with willful, wanton, or reckless conduct and who have injured, killed, or caused property damage to others to escape civil liability for their actions by having their judgment debt discharged in Federal bankruptcy court. This loophole affords opportunity for scandalous abuse ... Bankruptcy was never meant to be a shield behind which drunk drivers, and others who have acted in a reckless manner, can absolve themselves of liability. The concept of the fresh start for a debtor must defer to the possibility of a fresh start of the innocent victim... The term reckless generally is understood to mean that the perpetrator of the injury knew of the risk and went ahead with his action anyway. He adverted to the harm. Surely, we do not want to insulate from liability people that conduct themselves in a willful, wanton, or reckless manner as these words are generally understood. It may even be questionable whether we want to discharge a negligent tort-feasor or, but my amendment does not address that.
CONG.REC.S. 5326 (daily ed. Apr. 27, 1983) (statement of Sen. DeConcini).

or imputed liability are appended to the statutory exceptions to a discharge in bankruptcy. Quite the contrary, application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts resulting from *willful* acts committed *by the debtor* be nondischargeable. Vicarious liability as a social policy or legal fiction ignores the master's knowledge and imposes fault and financial responsibility without regard to culpability or intent. Section 523(a)(6) is founded on the contrary notion that only a debt resulting from the deliberate acts of the debtor can be excepted from discharge in bankruptcy. In the absence of clear statutory exception for "vicarious acts," the legislative intent to permit a broad discharge in bankruptcy should not be emasculated by common law tort principles. As the court noted in *Elmore v. Davis,* 23 B.R. 633 (Bkrtcy.W.D.Ky.1982):

> Plaintiff has ... requested this court to find the judgment debt nondischargeable on the theory of "imputable" or vicarious liability...." The court remains unpersuaded and rejects the argument... Section 523(a)(6) of the Bankruptcy Code expressly requires a finding of malicious injury "by the debtor" before a debt can be held nondischargeable.

*Id.* at 635 n. 5.

In the instant case the plaintiffs' complaint is based entirely on claims of negligence, statutory presumptions of negligence or vicarious liability, not on any deliberate or intentional conduct by the debtors. The actions of Craig or A & C do not constitute willful and malicious acts by these debtors on these facts.

Accordingly, the court finds that the debts are dischargeable.

An appropriate order will be entered.