In re Charles CORNELL & Mary D. Cornell, husband and wife, Debtors.

Dane G. BOWSE & Michael J. Bennett, Plaintiffs,

v.

Charles CORNELL & Mary D. Cornell, Defendants.

Bankruptcy No. B–83–01865–142.

United States Bankruptcy Court, E.D. Washington.

Sept. 6, 1984.

Richard Bryan Geissler, Spokane, Wash., for plaintiffs.

Edward G. Beukelman, Hackney Law Firm, Spokane, for defendants.

### MEMORANDUM DECISION AND JUDGMENT ON MOTIONS FOR SUMMARY JUDGMENT

SIDNEY C. VOLINN, Bankruptcy Judge.

### SUMMARY OF LITIGATION

Bankruptcy proceedings were initiated when the Cornells filed a joint petition for

relief under Chapter 7 of the Bankruptcy Code on October 20, 1983. The plaintiffs had filed a Washington State Court complaint against the Cornells on June 24, 1983, in Pend Oreille County Superior Court, charging their seven year old son, Uriah, with the intentional tort of arson and the parents Cornell with negligence in failing to supervise him. They alleged that the Cornells' negligence led to Uriah's arson and that the Cornells are liable for plaintiffs' damages under the state Parental Liability Statute, RCW 4.24.190.[1]

On December 12, 1983, Plaintiffs Dane Bowse and Michael Bennett filed this adversary proceeding seeking relief under 11 U.S.C. § 523(a)(6), so that they could proceed with their Superior Court suit for damages resulting from Uriah's setting fire to their chicken coop and shop. Plaintiffs thereafter filed a motion for summary judgment. They contend that this court should except from discharge, pursuant to § 523(a)(6), the "willful and malicious injury" provision, their claim against debtors Charles and Mary Cornell. It may be noted that the state court complaint which plaintiffs seek to prosecute alleges simple negligence as to the parents. Since the advent of bankruptcy, plaintiffs have added elements of willfulness and intent to their characterization of defendant parents' conduct.

In response, the Cornells have filed a cross-motion for summary judgment for dismissal of the plaintiffs' claims contending that § 523(a)(6) is inapplicable on the facts alleged by plaintiffs.

### A. Plaintiffs' Motion for Summary Judgment

#### 1.

Section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that "(a) A discharge under Section 727 ... does not discharge an individual debtor from any debt ... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity ...."

In the memorandum supporting their motion for summary judgment, the plaintiffs contend that their damage was proximately caused by the Cornells' "willful negligence in permitting their child to have the means and unsupervised opportunity" to set fires. They contend that the Cornells' conduct showed a "reckless disregard" for the plaintiffs' safety and property.

Plaintiff Dane Bowse filed an affidavit which states that he knew Uriah set the fires because children apprehended him at the chicken coop fire with matches in his hand. He states that this was not the first time that Uriah set fires; that a Community Mental Health Center in Newport, Washington had a file on the child; and that the Cornells habitually left for work before Uriah went to school, even though they had been counseled about his "pyromania."

The Cornells have filed a motion to strike Mr. Bowse's affidavit on the ground that he filed it after the court's deadline for submission of written materials. Nevertheless, we will consider the affidavit as pertinent to the plaintiffs' summary judgment motion.

#### 2.

■ As indicated, plaintiffs contend that the Cornells were guilty of "willful negligence in permitting their child to have the means and unsupervised opportunity to commit the tort of arson." However, Mr. Cornell's affidavit states that the Cornells "have always attempted to closely supervise [Uriah]. We make every effort to keep dangerous instrumentalities away from him. We do not allow him to play with, or have matches or anything else which would start a fire."

Mrs. Cornell's affidavit states that:

> owner of such property ... in a civil action at law for damages in an amount not to exceed three thousand dollars. This section shall in no way limit the amount of recovery against the parent or parents for their own common law negligence.

---

1. RCW 4.24.190 provides in relevant part that: The parent or parents of any minor child under the age of eighteen years who is living with the parent or parents and who shall willfully or maliciously destroy property, real or personal or mixed ... shall be liable to the

Uriah is a well behaved child and has never been mischievous. We had no previous knowledge that he might set fire to the property of the plaintiffs.

Charles and I have always attempted to strictly supervise Uriah's activities. We taught him that fire was not something with which you play. That it was dangerous.

The Cornells' affidavits create a genuine issue of fact as to whether they failed to properly supervise Uriah, and indeed as to whether Uriah committed an intentional wrong. It is elementary that where there is a disputed issue of relevant fact summary judgment is not appropriate. There being such factual issues, plaintiffs' motion for summary judgment must be denied.

### B. The Debtors' Cross-Motion for Summary Judgment

#### 1.

■ The Cornells have filed a cross-motion for a summary judgment holding plaintiffs' claims dischargeable. Viewing the parties' affidavits in the light most favorable to the non-moving party, the court observes that Dane Bowse's affidavit asserts at most that the Cornells were negligent. Mr. Bowse contends that Uriah had a previous history of setting fires which the Cornells knew, and that, nevertheless, they left him unsupervised. Assuming the truth of these allegations, they fall short of stating that the Cornells acted willfully or maliciously; they allege, essentially, some form of negligence. Juxtaposition of the work "willful" with the word "negligence," on the facts alleged in the affidavit, is a semantic exercise rather than a factual allegation of an intentional tort.

Negligence, even though of a greater than ordinary nature, does not meet the "willful and malicious" standard of § 523(a)(6) which has been held to intend that the term "willful" means deliberate or intentional. While there are cases which because of aggravated instances of carelessness or recklessness, hold that such conduct so transcended ordinary negligence as to become intentional, there is a current view that § 523(a)(6) should deal with intentional wrongs rather than gradations of negligence. See 1 Norton Bankr. L. & Prac, § 27.53.[2] In any event, on the facts alleged in the affidavits, there is a substantial shortfall in ascribing to Uriah's parents conduct which can give rise to any inference that they intended that he engage in arson.

#### 2.

The Parental Liability Statute imposes strict liability on parents, up to a maximum of $3,000, for willful or malicious destruction of property by their minor children. It is this statute, imposing vicarious liability, which the plaintiffs would employ in Superior Court to hold the Cornells liable.

RCW 4.24.190 creates liability as to the parents without regard to fault. They are insurers not to exceed $3,000 when their minor child has intentionally damaged or destroyed property. The statute also provides, in effect, that they may be liable "for their own common law negligence." Thus it is not possible, conceptually, to link liability of the parents under the Washington statute with the intentional torts contemplated by 11 U.S.C. § 523(a)(6) which is applicable to "willful and malicious injury by the debtor" (Emph.Supp.).

#### 3.

Since it is the parents and not Uriah who are the debtors in this bankruptcy proceeding, and assuming arguendo that Uriah intentionally engaged in acts of arson, the question further arises as to whether Uriah's presumed willful and malicious misconduct may be imputed to the debtors without regard to RCW 4.24.190. This in turn raises the question as to whether a

---

**2.** There is some controversy as to whether the case of Tinker v. Colwell 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1902) applying a "reckless disregard" rather than an intentional or "willful" standard has been overruled by statute. See discussion in Norton, supra. While it is possible that in extreme cases there will be a tendency to depart from a standard of strict or literal intent, in our view this proceeding is not such a case. Consideration of the applicability of Tinker is therefore unnecessary.

child of tender years may have the requisite intent. There is a case in this state so holding. In *Garratt v. Dailey*, 46 Wash.2d 197, 279 P.2d 1091 (1955), it was held that a five year old boy who moved a chair out from under the plaintiff immediately before she lowered herself to sit in it, could be liable for an intentional tort. Assuming further that this case is still the law and that Uriah could be held civilly liable, one may inquire as to whether there can be liability on the part of the debtors on some imputed basis.

At the outset it should be noted that the predecessor of § 523(a)(6) under the former Bankruptcy Act, § 17(a)(8) contained no specific designation as to whose conduct was involved. It provided that "A discharge in bankruptcy shall release a bankrupt from all his provable debts ... except such as are liabilities for willful and malicious injuries to the person or property of another ...." § 523(a)(6), as already stated, excepts from the operation of the discharge "willful and malicious injury *by the debtor* to another entity or to the property of another entity (emph. supp.). Addition of the phrase "by the debtor" adds force to the current trend of case law rejecting imputed liability.

In *Ordmann v. Hoppa*, 31 B.R. 753 (Bankr.E.D.Wis.1983), there was an effort to bring an essentially negligence case within the reach of § 523(a)(6) by contending that there was an element of willfulness and intention in negligently maintaining a truck trailer. The plaintiff attempted to involve the debtor who owned the truck which had been operated by an employee. The accident resulted in a fatality. The court could not find intentional or willful and malicious conduct within the meaning of § 523(a)(6), and also pointed out that for the debtor to have been held liable it would have had to be proven that he deliberately sought to have his employee drive into the plaintiff's vehicle.

In *Elmore v. Davis*, 23 B.R. 633 (Bankr. W.D.Ky.1982), the debtor defendant, a county sheriff, was the defendant in a civil rights trial wherein a substantial compensatory judgment was awarded. The bankruptcy court found from the record that

the jury refused to award punitive damages which it could have done if it had found the debtor to have engaged in malicious, wanton, or oppressive conduct. Apparently, there was a shooting by someone on the sheriff's staff. The court in a footnote in answer to a contention that the sheriff was in charge at the time of the shooting and was therefore responsible, stated

> this court remains unpersuaded by counsel's theatrics and rejects this argument for two reasons: 1) § 523(a)(6) of the Bankruptcy Code expressly requires a finding of malicious injury 'by the debtor' before a debt can be held dischargeable. In this case the jury does not permit liability under plaintiff's 'imputable' or vicarious theory. This theory has been previously rejected by the Supreme Court in *Monell v. Department of Social Services of New York*, 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58, 56 L.Ed.2d 611 (1978).

*Monell* criticizes the imposition of tort liability on an employer "when the sole nexus between the employer and the tort is the fact of employer-employee relationship."

The *Davis* case was cited in *Thatcher v. Austin*, 36 B.R. 306 (Bankr.Ct.MD Tenn.,1984). In that case, *Austin*, a Murfreesboro, Tennessee entrepreneur, organized an outdoor rock festival, advertised as "Cow Jam II", in rural Rutherford County, Tennessee. For a $6.00 admission fee, persons were entitled to attend the concert and consume unrestricted amounts of "free beer."

William Craig, a 17-year-old maintenance worker and cook, drove to the concert with a friend. They consumed at least one six pack of beer during the trip. Craig testified that during the concert he may have consumed, insofar as he could recall, as many as "40 cups" of beer.

After the concert while driving his vehicle, he killed a pedestrian whose parents sued Craig and various others including Austin alleging various tortious acts.

The Austins thereafter filed bankruptcy which resulted in a complaint based on § 523(a)(6). The plaintiffs contended Aus-

tin was liable on two theories: 1) that his failure to prevent minors from consuming alcohol at "Cow Jam II" was in violation of a state statute and constituted willful and malicious conduct and, 2) that Craig, among others, engaged in willful and malicious conduct which could be imputed to the debtors.

The court again discussed the modern tendency to require proof of intention over and beyond some gradation of negligence. It concluded that the failure of Austin to prevent Craig from drinking was not shown to be a willful act on the part of the debtor. The court thereafter engaged in an extended discussion of imputed liability concluding that "In the absence of clear statutory exception for 'vicarious acts,' the legislative intent to permit a broad discharge in bankruptcy should not be emasculated by common law tort principles (relating to principle and agent)," thereafter citing *Davis, supra.*

## CONCLUSION

Analysis of the historical background of § 523(a)(6) demonstrates that where there is conduct of an exceptionally culpable nature, participated in or permitted by a responsible person, the liability resulting therefrom may not be dischargeable.[3] Whether cases such as *Davis* and *Austin supra* represent a definite and clear departure from the past remains to be seen. However, considering the change in language of the present statute in the context of this case one can only conclude that defendants have not stated a dischargeability claim. In summary, giving the plaintiff's facts the most favorable interpretation possible, one can only conclude that Uriah was a child who had a serious problem, that his parents were aware of it and that somehow they could have done a bet-

ter job of monitoring his movements. This conduct falls short of the intentional standard of § 523(a)(6). As to imputing to the parents Uriah's conduct, assuming it was intentional, the statute, current case law, and the facts of this case as provided by the record provide no basis for doing so.

The foregoing memorandum constitutes the court's findings and conclusions.

On the basis of the foregoing findings and conclusions it is

Ordered, Adjudged, and Decreed, that plaintiff's motion for summary judgment be and is denied, it is further

Ordered, Adjudged, and Decreed that the cross motion of the defendant debtors for summary judgment holding plaintiffs' claim to be dischargeable and subject to stay pursuant to 11 U.S.C. §§ 362(a), or 524(a) be and it is hereby granted.

---

**3.** *See In Re Papale* 17 F.Supp. 146 (E.D.New York, 1936). A boy of thirteen discharged a B-B gun into the eye of a nine year old child who lost sight thereof. The court found that the parents of the thirteen year old knew that he shot "lead slugs at cats, birds and at his playmates," and concluded:

> Certainly, parents who permit a child thirteen and a half years of age to possess an air rifle and to shoot lead pellets indiscriminately

should be held accountable for the acts of their son, and especially in a case of this kind where a child nine years of age has lost the sight of one eye as the result of the wanton and willful negligence of the parents in permitting their child to possess and shoot an air rifle. They should not receive consideration from a court in bankruptcy and the judgment should not be discharged in bankruptcy.