In re Deborah Lee **GRAHAM**, Debtor.

Mary E. **JONES**, Plaintiff,

v.

Deborah Lee **GRAHAM**, Defendant.

Bankruptcy No. 95–50288.
Adv. No. 95–5021.

United States Bankruptcy Court,
W.D. Missouri.

Dec. 5, 1995.

Pamela L. Cone, St. Joseph, MO, for Plaintiff.

Mary V. Hower, St. Joseph, MO, for Defendant.

---

## MEMORANDUM OPINION

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Plaintiff Mary E. Jones objects to the discharge of a judgment debt pursuant to 11 U.S.C. § 523(a)(6). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I) over which the Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and 157(b)(1). For the reasons set forth below, I find in favor of debtor/defendant Deborah Lee Graham ("debtor").

Debtor and her former husband, Stanley Adams, purchased two adjacent apartment buildings from Mr. Adams' mother in 1986 or 1987. Debtor and Mr. Adams subsequently separated in February of 1990. Debtor and Mr. Adams lived in a rental unit in one of their apartment buildings while living together. He remained in such unit after their separation. Debtor states she left her furniture and some personal belongings in Mr.

Adams' apartment until she could purchase her own home, therefore, she returned to the apartment building every three to six months. The buildings were owned jointly until the time of debtor and Mr. Adams' divorce in June of 1995. After debtor and Mr. Adams separated in 1990, debtor did not participate in the management or leasing of any apartments, nor did she receive any rental income from either building.

In April of 1991 plaintiff Mary E. Jones approached Mr. Adams, who is not in bankruptcy, and asked to see an apartment that was apparently vacant. Debtor happened to be visiting Mr. Adams and was present in the backyard when Mr. Adams informed Ms. Jones he had already accepted a deposit on the apartment in question. Ms. Jones brought a housing discrimination suit pursuant to 42 U.S.C. § 1983 against both debtor and Stanley Adams in the Federal District Court for the Western District of Missouri, St. Joseph Division, captioned Mary Jones v. Deborah Adams and Stanley Adams, Case Number 91–6085–CV–SJ–6 (the "District Court Case"). On June 22, 1994, following a jury verdict, a judgment was entered in favor of plaintiff Mary E. Jones. Compensatory damages were assessed against debtor and Mr. Adams in the amount of $5,000.00. Pl. Ex. # 1. Punitive damages were assessed against Stanley Adams, but not against debtor, in the amount of $5,000.00. *Id.* On August 8, 1994, a judgment assessing costs of $653.85 was entered against both debtor and Stanley Adams. Pl.Ex. # 2. Finally, on November 8, 1994, a judgment awarding plaintiff her attorney's fees in the amount of $15,463.14 was entered against debtor and Stanley Adams. Pl.Ex. # 3.

Debtor filed for Chapter 7 bankruptcy relief on June 12, 1995. This adversary proceeding was filed on September 5, 1995. Plaintiff filed a motion for summary judgment on November 7, 1995, claiming the debtor is collaterally estopped from relitigating in this Bankruptcy Court the facts presented in the District Court Case. The summary judgment motion relied primarily on certain jury instructions, and the verdict, from the District Court case. The Court took the motion for summary judgment with

the case. At trial, plaintiff essentially relied on the same evidence, arguing that principles of collateral estoppel require a finding that debtor's obligation in nondischargeable.

 Under principles of collateral estoppel, a judgment debtor may be precluded from relitigating an issue that was actually litigated and decided adversely to such debtor in an earlier proceeding. *Combs v. Richardson*, 838 F.2d 112, 113 (4th Cir.1988). However, the "determination that an issue was actually litigated and necessary to the judgment must be made with particular care." *Id.*

The Eighth Circuit requires that four criteria must be met before the doctrine of collateral estoppel applies: "(1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) that issue must have been actually litigated; (3) it must have been determined by a valid and final judgment; and (4) the determination must have been essential to the judgment." *Lovell v. Mixon*, 719 F.2d 1373, 1376 (8th Cir.1983) *citing In re Piper Aircraft Distribution System Antitrust Litigation*, 551 F.2d 213 (8th Cir.1977).

There is no question that the District Court found that housing discrimination occurred. There is, however, no specific provision of the Bankruptcy Code (the "Code") which provides that debts arising from housing discrimination are nondischargeable. *See* 11 U.S.C. § 523(a). Hence, plaintiff filed this adversary complaint under section 523(a)(6) of the Code. That section provides as follows:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

. . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11 U.S.C. § 523(a)(6). To make her case under collateral estoppel, plaintiff attempted to show that the District Court made a determination of willfulness and malice by the debtor. If not, plaintiff must prove willful and malicious injury—by the debtor— through independent evidence in the dischargeability proceeding, which evidence was not offered.

In asking the Court to determine the collateral estoppel effect of a jury verdict, plaintiff has the "burden of introducing a record sufficient to reveal the controlling facts and pinpoint the exact issues litigated in the prior action." *Bender v. Tobman*, 107 B.R. 20, 23 (S.D.N.Y.1989). Plaintiff did not submit a transcript of the District Court trial. She did, however, submit relevant jury instructions. Those instructions provided that Ms. Graham was to be held liable if, acting either by herself or through her husband as rental agent, she discriminated against plaintiff, and race was a motivating factor in such discrimination. Affidavit in Support of Plaintiff's Motion for Summary Judgment, Doc. # 7, Ex. A, at 2–3. The jury awarded actual damages of $5,000.00 against both Ms. Graham and her husband.

The jury was also given the following punitive damages instruction:

Instruction No. K

In addition to the damages mentioned in the other Instructions, the law permits the jury under certain circumstances to award an injured person punitive damages in order to punish a defendant for some extraordinary misconduct and to serve as an example or warning to others not to engage in such conduct.

If you find in favor of plaintiff and if you find that defendant acted with malice or with reckless indifference to the plaintiff's right not to be discriminated against on the basis of her race, then in addition to any damages to which you find plaintiff entitled, you may, but are not required to, award plaintiff an additional amount as punitive damages if you find it is appropriate to punish a defendant or to deter a defendant and others from like conduct in the future. Whether to award plaintiff punitive damages, and the amount of those damages, are within your discretion.

You may assess punitive damages against defendant or you may refuse to impose punitive damages. Doc. # 7, Ex. A, at 3.

The jury awarded punitive damages of $5,000.00 against nondebtor Stanley Adams, but awarded no punitive damages against debtor. Pl.Ex. # 1. Thus, when presented with the opportunity to find that debtor acted with malice, or at least with reckless indifference, the jury declined to do so.

The question then, is whether the award of punitive damages against Mr. Graham, but not the debtor, is a debt "for willful and malicious injury by the debtor ..." In other words, plaintiff argues that Mr. Graham's malice, or reckless indifference, should be imputed to debtor.[1]

As pointed out by plaintiff, there is a line of cases which hold that the willful and malicious acts of one partner, committed in the ordinary course of business, can be imputed to other partners such that the debt is nondischargeable as to them as well. *See, e.g., McIntyre v. Kavanaugh*, 242 U.S. 138, 139, 37 S.Ct. 38, 39, 61 L.Ed. 205 (1916); *Impulsora Del Territorio Sur v. Cecchini (In re Cecchini)*, 780 F.2d 1440, 1444 (9th Cir. 1986); *Oetker v. Bullington (In re Bullington)*, 167 B.R. 157, 163 (Bankr.W.D.Mo. 1994). In each of the above cited cases, however, a finding that one partner was acting on behalf of the partnership, in the ordinary course of business, and that the other partner participated in any benefits from the willful and malicious conduct, was critical to the decision. *McIntyre*, 242 U.S. at 139, 37 S.Ct. at 39; *Cecchini*, at 1444; *Bullington*, at 163. It is relevant to point out that in *Bullington* the partnership was owned by a husband and wife, that Mrs. Bullington participated in the benefits of a conversion, that Mrs. Bullington signed a financing statement claiming the partnership had 103 Holstein Cows in its possession when in fact it had five, that Mrs. Bullington was involved in the day to day activities of the partnership, and that Mrs. Bullington had no source of income other than the profits from the partnership. Therefore, though the case was decided under the joint and several theory of liability contained in Missouri's partnership law, Mrs. Bullington's testimony was suspect as to her own lack of participation in

said conversion. There is no evidence Ms. Graham was even aware of the discrimination that obviously took place in the case at hand.

The better analogy to imputed liability under an agency theory is to be found in *Giuliano v. Albano (In re Albano)*, 143 B.R. 323 (Bankr.D.Conn.1992). In *Albano* debtor was held liable under the doctrine of respondeat superior for the conduct of one of his employees. The issue, however, was whether under the doctrine of vicarious liability the employee's willful and malicious conduct could be imputed to debtor such as to make the debt nondischargeable in debtor's Chapter 7 bankruptcy. *Id.* at 325. The Court in *Albano* stated:

> [E]ven if the conduct [of debtors' agents] were characterized as "willful and malicious" ... [such] conduct [cannot] ... be "imputed" to the debtors for § 523(a)(6) purposes.... There is nothing in the language or legislative history of § 523(a)(6) to suggest that common law notions of vicarious or imputed liability are appended to the statutory exceptions to a discharge in bankruptcy. Quite the contrary, application of vicarious liability would effectively vitiate the § 523(a)(6) requirement that only debts resulting from *willful* acts committed *by the debtor* be nondischargeable. Vicarious liability as a social policy or legal fictions ignores the master's knowledge and imposes fault and financial responsibility without regard to culpability or intent. Section 523(a)(6) is founded on the contrary notion that only a debt resulting from the deliberate acts of the debtor can be excepted from discharge in bankruptcy. In the absence of clear statutory exception for "vicarious acts," the legislative intent to permit a broad discharge in bankruptcy should not be emasculated by common law tort principles.

143 B.R. at 325 (quoting *Thatcher v. Austin (In re Austin)*, 36 B.R. 306, 310–12 (Bankr. M.D.Tenn.1984)). *See also St. Luke's Hospitals of Fargo, Inc. v. Smith (In re Smith)*, 119 B.R. 714, 721 (Bankr.D.N.D.1990); *Yelton v. Eggers (In re Eggers)*, 51 B.R. 452,

---

1. Since Mr. Graham is not the debtor, I need not decide whether a finding of "malice or reckless indifference" is tantamount to a finding of "willful and malicious injury."

453–454 (Bankr.E.D.Tenn.1985); *Bowse v. Cornell (In re Cornell)*, 42 B.R. 860, 862–64 (Bankr.E.D.Wash.1984).

■ Thus, the verdict as to punitive damages does not meet plaintiff's burden of proving that this is a debt for willful and malicious injury by the debtor. Plaintiff then falls back onto the verdict for actual damages, and contends that a violation of 42 U.S.C. § 1983 constitutes conduct that is *per se* willful and malicious. But negligence is sufficient to sustain an action under 42 U.S.C. § 1983. *Bruner v. Taylor (In re Taylor)*, 72 B.R. 696, 698 (Bankr.E.D.Tenn.1987). Thus, the court in *Roberson v. Schwenn (In re Schwenn)* found that "willful and malicious injury is not inherent in racial discrimination" and stated that if no punitive damages are awarded it is an indication that the defendant did not act wantonly or willfully. 44 B.R. 746, 749 (Bankr.E.D.Wis.1984). Plaintiff cites two cases which hold that a finding of discrimination alone is sufficient to satisfy the willful and malicious components of section 523(a)(6) of the Code. *Littlefield v. McGuffey (In re McGuffey)*, 145 B.R. 582, 589 (Bankr.N.D.Ill.1992); *Magana v. Moore Development Corp. (In re Moore)*, 1 B.R. 52 (Bankr.C.D.Cal.1979). In *McGuffey* the court held that implied or constructive malice—as opposed to actual malice—is sufficient to support a finding of nondischargeability under section 523(a)(6) in the Seventh Circuit. *McGuffey*, at 585. The Eighth Circuit, however, requires actual malice for non-dischargeability under Section 523(a)(6). *Barclays American/Business Credit, Inc. (In re Long)*, 774 F.2d 875, 879 (8th Cir.1985) *citing Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332–33, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). The Court in *Long* states that a debtor acts with malice when he or she intends or fully expects to harm the creditor. *Id.* at 882. Plaintiff has not shown, through the jury verdict or otherwise, that this debtor took any action by which she intended or fully expected to harm plaintiff.

In *Moore*, the other case cited by plaintiff, the Court found that debtor's agents "engaged in a conscious course of conduct to harass, embarrass and humiliate the plaintiffs with the motivation to encourage them to seek housing elsewhere ... the resident managers intentionally refused ordinary repairs and maintenance to the plaintiffs' apartments while providing those services to all Caucasian families." 1 B.R. at 53. The Court went on to hold such behavior was willful and malicious and could be imputed to the owner of the apartment complex. *Moore*, however, was decided under section 17(a)(8) of the Bankruptcy Act, 11 U.S.C. § 35(a)(8). *Id.* Section 17(a)(8) of the Bankruptcy Act, unlike the current section 523(a)(6), did not require that the willful or malicious injury be "by the debtor" in order to have the debt arising from said injury be nondischargeable.[2]

For all these reasons, I find that plaintiff did not meet her burden of proving that she was injured by any willful and malicious act of the debtor.

Furthermore, at the hearing, debtor demonstrated through her own evidence that she did not engage in willful and malicious conduct towards plaintiff. Debtor's testimony was undisputed that she was present when plaintiff inquired about the apartment. However, she did not speak to Ms. Jones. She had no involvement at all in managing or leasing units in the apartment buildings, she derived no benefit from the rental income, and she had no knowledge of the status of the apartment in question. Debtor did not engage in any conduct by which she intended or fully expected to cause harm to plaintiff.

For all of the above reasons I find that plaintiff's motion for summary judgment should be denied, and that the debt in the amount of $21,116.99, plus interest accrued, costs, and attorney's fees, is dischargeable. An Order in accordance with this Memorandum Opinion will be entered this date.

---

**2.** Section 17(a)(8), which is set out in *Moore*, provided in part that debts not be discharged if they "are liabilities for willful and malicious injuries to the person or property of another ..." 11 U.S.C. § 35(a)(8).