In re Gregory Alan TAYLOR, Debtor.

In re James Kent BATES, a/k/a J.K. Bates, a/k/a Kent Bates, Debtor.

Gerald A. BRUNER, Plaintiff,

v.

Gregory Alan TAYLOR James Kent Bates a/k/a J.K. Bates a/k/a Kent Bates, Defendants.

Bankruptcy Nos. 3–85–00391, 3–85–00392.
Adv. No. 3–85–0998.

United States Bankruptcy Court, E.D. Tennessee.

March 24, 1987.

·Pamela L. Reeves, Morrison, Morrison, Tyree & Reeves, Knoxville, Tenn., for defendant.

Robert L. Levi, Lockett, Slovis & Weaver, Knoxville, Tenn., for plaintiff.

### MEMORANDUM ON MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT

CLIVE W. BARE, Bankruptcy Judge.

On December 16, 1986, plaintiff Gerald Bruner, a judgment creditor of the defendants, filed a Motion for Summary Judgment pursuant to Bankruptcy Rule 7056. Bruner alleges that 11 U.S.C.A. § 523(a)(6) (West 1979) prevents defendants from discharging their debt to him. Claiming the issue has already been adjudicated in a federal civil rights action and judgment, he asserts the doctrine of collateral estoppel.

Defendants, James Bates and Gregory Taylor, ·on January 14, 1987, filed a Cross Motion for Summary Judgment. Asserting collateral estoppel is inapplicable, defendants contend that Bruner is judicially estopped from asserting the injury sustained by him, resulting in the judgment, was the result of a "willful and malicious" injury.

## I

### FACTS

The long and complicated path bringing these parties into the bankruptcy court began on the night of April 22, 1979. The facts, briefly stated, are as follows:

Plaintiff Bruner was asleep in his vehicle which was parked adjacent to a school building. Bruner was awakened by Knoxville Police Officer Steve Tinder and ordered out of his car. Bruner testified that, while he was being searched, Tinder struck him on the back left side of his head with a flashlight or club. Thereafter a scuffle ensued and Bruner fled. In response to a call for assistance, off duty policemen James Bates and Gregory Taylor responded, dressed in their civilian clothes. They were accompanied by Explorer Scout Christian Castellaw, acting as a reserve police officer, also dressed in civilian clothes.

Bruner was in hiding when discovered by Castellaw. A scuffle ensued between them and Bruner was hit on the head with a flashlight. Taylor arrived in the alley during this struggle and assisted Castellaw in subduing Bruner. Bates arrived next and also assisted in helping to restrain Bruner.

In the meantime, also in response to Officer Tinder's call for assistance, uniformed officers Wade Dunaway, Rick Fretz, James Humphrey, and Richard Ingram arrived at the scene. Those officers arrived after Bruner had been subdued and handcuffed. Bruner was bleeding about the face and an ambulance was called. The ambulance stopped at the entrance to the alley. Officers Tinder and Fretz assisted or dragged Bruner to the end of the alley where the ambulance was waiting. Defendants Tay-

lor and Bates contend they did not accompany Bruner down the alley to the ambulance because they were searching for some lost equipment. Taylor and Bates also contend they were not involved in any assault on Bruner beyond that necessary to place him under arrest.

Upon arriving at the hospital, Bruner was examined by Dr. Joe Beals and immediately thereafter by Dr. Stephen Natelson, a neurosurgeon. Dr. Natelson found Bruner "was awake and alert, and that he had a large boggy feeling, swelling above his right ear on the head. He had some abrasions on his shoulder. He had some bruises and some cuts on his face and chin." Plaintiff's Exhibit 4 at 294a.[1]

After reviewing x-rays and a CT scan of the brain, Dr. Natelson felt that Bruner had a closed depressed skull fracture, with injury to the brain. An operation performed the same day confirmed Dr. Natelson's diagnosis. Bruner now suffers permanent brain damage and post traumatic epilepsy.

Bruner filed suit in the United States District Court for the Eastern District of Tennessee against all seven officers and Explorer Scout Castellaw, alleging a civil rights violation under 42 U.S.C.A. § 1983 (West 1981). Judgment was entered against all defendants in the amount of $300,000.00. The district court set aside the jury verdict for failure to show "personal involvement" by all defendants and ordered a new trial.

At the close of the evidence in the second trial, the district judge directed a verdict in favor of defendants Ingram, Dunaway, and Humphrey. The jury returned a verdict against defendants Bates and Taylor, and Castellaw for $100,000.00 damages. The jury found defendants Tinder and Fretz not liable to Bruner. This judgment was affirmed by the Sixth Circuit Court of Appeals and certiorari was denied by the United States Supreme Court.

Seeking indemnity, Bates, Taylor, and Castellaw then filed an action against the City of Knoxville pursuant to Tenn.Code Ann. § 7–51–202 (1982) and Knoxville City Code § 2–1801(a). At issue was whether defendants were "willful and malicious" or only "negligent," and whether the judgment in the district court action collaterally estopped them from claiming they were merely "negligent." The chancellor found in favor of defendants Bates and Taylor. The court of appeals however, reversed the decision of the chancellor, finding "Bates and Taylor cannot now be heard to say their actions did not constitute willful wrongdoing." *Bates v. City of Knoxville*, No. 646 slip op. at 14 (Tenn.Ct.App. Jan. 28, 1986) [Available on WESTLAW, TN–CS database].

## II

### A. *Collateral Estoppel*

Bruner seeks to except from discharge the debt owed to him pursuant to 11 U.S.C.A. § 523(a)(6) (West 1979). This provision reads as follows:

> (a) A discharge ... does not discharge an individual debtor from any debt—
>
> .      .      .      .      .
>
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity; ....

11 U.S.C.A. § 523(a)(6) (West 1979).

Bruner alleges the finding by the Sixth Circuit Court of Appeals and the Tennessee Court of Appeals effectively estops defendants Taylor and Bates from re-litigating the issue of "willful and malicious injury."

■ To find collateral estoppel, the precise issue must have been raised in the prior proceeding; the issue must have been actually litigated; and the determination must have been necessary to the outcome. *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.1981).

■ The issue of "willful and malicious injury" in the federal court action was neither pled, proven, nor necessary to the judgment. Negligence is sufficient to sustain an action arising under 42 U.S.C.

---

1. Plaintiff's Exhibit 4 is the Joint Appendix, filed in the Sixth Circuit Court of Appeals, reciting the testimony in Bruner's federal civil rights action.

§ 1983 (West 1981). *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■ The question becomes muddier with regard to the state indemnity action. The issue at trial in that action was whether Bates and Taylor negligently inflicted injury upon Bruner or whether they did so willfully and maliciously. The chancellor held there was no willful or malicious intent on their part. However, the Tennessee Court of Appeals held "Bates and Taylor cannot now be heard to say their actions did not constitute willful wrongdoing." *Bates v. City of Knoxville*, No. 646 slip op. at 14 (Tenn.Ct.App. Jan. 28, 1986) [Available on WESTLAW, TN–CS database].

This court is not satisfied the holding of the state court of appeals is a finding of willful and malicious injury that is required by 11 U.S.C.A. § 523(a)(6) (West 1979). Therefore, defendants are not collaterally estopped from litigating this issue.

### B. *Judicial Estoppel*

In the prior state court indemnity action, Bruner, as judgment creditor, joined with defendants Bates and Taylor as plaintiffs against the City of Knoxville. Seeking to find a "deep pocket" to satisfy the judgment, Bruner argued vigorously that *both* the federal and state court records supported a finding of liability based on simple negligence. This argument was successful in the chancery court, but ultimately failed on appeal to the Tennessee Court of Appeals. Defendants assert that by taking this inconsistent position in the prior state court proceeding, plaintiff is now judicially estopped from arguing a contradictory position.

■ Judicial estoppel is intended to protect the integrity of the judicial process by preventing intentional inconsistency. See *Edwards v. Aetna Life Insurance Co.*, 690 F.2d 595, 599 (6th Cir.1982) (citations omitted).

The court in *Edwards* sets forth the test in applying judicial estoppel: "[T]he doctrine of judicial estoppel applies to a party who has successfully and unequivocally asserted a position in a prior proceeding." *Id.* at 598. The focus then turns to the word "successful." It is clear Bruner's argument carried the day in the chancery court, but ultimately failed in the court of appeals. When then must the party have been "successful"?

■ A footnote in *Edwards* sheds some light upon this inquiry. The court says, "[a] party need not finally prevail on the merits in the first proceeding. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." *Edwards*, 690 F.2d at 599, n. 5. Defendants assert a literal translation of "first court," claiming the victory in the chancery court meets this requirement. "[F]irst court" however, is used interchangeably with "first proceeding." The court in *Edwards* could not have meant a party must stand by a position taken and accepted in a lower court that was found to be clearly erroneous by a higher court. Therefore, although the defendants may have succeeded in the "first court," they were eventually unsuccessful in the "first proceeding." The final determination by the highest, or higher, court is determinative.

### C. *Summary Judgment*

■ Neither collateral estoppel nor judicial estoppel controls. Of course, a motion for summary judgment can be granted only if there is no dispute as to the facts. Bankruptcy Rule 7056; Fed.R.Civ.P. 56.

Such a dispute exists in the facts presented at bar. Plaintiff contends the damaging injuries occurred at the hands of defendant debtors, and that such injuries were willfully and maliciously inflicted. Defendants assert no such injury occurred by their hands, but imply the serious injuries occurred by the hands of the other officers during the journey from the site of the arrest to the ambulance. According to defendants, this was where the damaging blow occurred. They assert culpability lies only in their recklessness or negligence in failing to properly supervise Bruner's ar-

rest, not by employing excessive and unreasonable force in restraining him. There has been "no showing ... that the [d]efendant[s] acted with the requisite willful and malicious intent necessary under 523(a) of the Bankruptcy Code." Brief In Support Of Response To Motion For Summary Judgment And Counter-Motion For Summary Judgment for Defendants at 6.

It is therefore necessary to set this cause for trial to determine whether the plaintiff's injuries were caused by the "willful and malicious" acts of the defendant debtors.

Bruner's Motion for Summary Judgment will be denied; Bates' and Taylor's Motion for Summary Judgment likewise will be denied.