PHILIP W. LARABEE & another[1] *vs.* POTVIN LUMBER
COMPANY, INC.

Berkshire.  September 13, 1983. — December 22, 1983.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Trespass. Real Property,* Removal of timber. *Assignment. Practice, Civil,* Appeal. *Words,* "Arising under," "By reason of."

The Appeals Court properly refused, on its own initiative, to consider an appeal that was not docketed in accordance with Mass. R. A. P. 10 (a), as appearing in 378 Mass. 937 (1979), and, as matter of discretion, this court denied a motion for enlargement of time to docket the appeal. [638-639]

A written instrument, executed by the sellers of a tract of land, providing for an assignment to the buyers of all of the sellers' "claims . . . and . . . causes of action . . . by reason of" a contract between them and a lumber company for the sale of certain standing timber on the land, included an assignment of the sellers' right to recover damages from the company under G. L. c. 242, § 7, for the unlicensed cutting of certain other standing timber which was not under the contract. [640-642]

In an action to recover damages from a lumber company under G. L. c. 242, § 7, for the unlicensed cutting of standing timber on the plaintiffs' property, evidence warranted the judge's finding that the company, without good reason, cut more trees than were permitted by a contract it had entered with the plaintiffs' predecessors in title. [642-643]

In an action to recover damages from a lumber company under G. L. c. 242, § 7, for the unlicensed cutting of standing timber on the plaintiffs' property, the judge's acceptance of the plaintiffs' testimony as to the value of their property, in determining the diminution in its value as a result of the cutting, was not incorrect as matter of law. [643]

CIVIL ACTION commenced in the Superior Court Department on August 8, 1978.

---

[1] Karl A. Schmidt.

The case was heard by *Alberti*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Stephen Pagnotta* for the plaintiffs.

*Robert I. Manuel* for the defendant.

LYNCH, J. This case is before the court for further appellate review of a decision of the Appeals Court. *Larabee* v. *Potvin Lumber Co.*, 15 Mass. App. Ct. 225 (1983). The plaintiffs, owners of a tract of land in Williamstown, brought an action seeking damages and an injunction barring the defendant, Potvin Lumber Company, Inc. (Potvin), from cutting standing timber on the plaintiffs' property. The defendant brought counterclaims for conversion and interference with contractual relations. A judge of the Superior Court awarded the plaintiffs nominal damages for breach of contract and $27,000 for the wilful and unlicensed cutting of standing timber. See G. L. c. 242, § 7. He allowed the defendant to set off $4,405.80 against that judgment, for the value of its contractual right to certain trees that remained uncut on the plaintiffs' property for which the defendant had already paid. Both parties appealed from this judgment. The Appeals Court reversed as to the $27,000 portion of the judgment. Because the plaintiffs' appeal of the set off was not seasonably docketed in the Appeals Court, it was not considered. After the Appeals Court decision was published the plaintiffs moved to enlarge the time for docketing their appeal. We took the case on further appellate review before the Appeals Court acted on that motion. We agree with the Appeals Court's refusal to hear the plaintiffs' appeal because it was not timely docketed. However, we do not think that court was correct in striking the portion of the judgment awarding damages on the tort claim, and therefore we affirm the judgment of the Superior Court.

In March, 1978, the plaintiffs' predecessors in title entered into a contract with Potvin for the sale of standing timber on the property. Only certain marked trees were to be taken by Potvin, which assumed responsibility for felling

and removing the timber. In June, 1978, the plaintiffs signed an agreement to purchase the property. Shortly thereafter, but before the closing, Potvin began cutting trees under the contract. The plaintiffs discovered shortly before purchasing the property that Potvin had cut and removed trees that were not under the contract. At the closing, the plaintiffs entered into an agreement with the sellers, who assigned to them "all claims . . . and . . . causes of action . . . which [the sellers] have had or now have, or may have, against [Potvin] by reason of the written contract [for the sale of timber]." After the sale the plaintiffs obtained an injunction barring further cutting of timber and also brought their action for damages in the Superior Court.

1. *The motion to enlarge time for docketing the appeal.* The Appeals Court was clearly within the proper exercise of its discretion in refusing to consider the plaintiffs' appeal. The requirements for docketing an appeal are prescribed by Mass. R. A. P. 10 (a) (1), as appearing in 378 Mass. 937 (1979).[2] If the appeal is not docketed within ten days, "the lower court or a single justice of the appellate court may, for cause shown, enlarge the time for docketing the appeal or permit the appeal to be docketed out of time." Mass. R. A. P. 10 (a) (3), as appearing in 378 Mass. 937 (1979). Failure to comply with this rule may result in dismissal, if the appellee so moves.[3] In this case, no such motion was made by the defendant, yet the Appeals Court refused to consider the

---

[2] "Within ten days after receiving from the clerk of the lower court notice of assembly of the record, or of approval by the lower court of an agreed statement, the appellant shall pay to the clerk of the appellate court the docket fee fixed by law, and the clerk shall thereupon enter the appeal upon the docket."

[3] Rule 10 (c) of the Massachusetts Rules of Appellate Procedure provides, "If any appellant in a civil case shall fail to comply with . . . Rule 10 (a) (1) or (3), the lower court may, on motion with notice by any appellee, dismiss the appeal, but only upon a finding of inexcusable neglect; otherwise, the court shall enlarge the appellant's time for taking the required action. If, prior to the lower court's hearing such motion, the appellant shall have cured the noncompliance, the appellant's compliance shall be deemed timely."

appeal. While an appellate court is permitted to excuse missed deadlines, Mass. R. A. P. 10 (a) (3), and Mass. R. A. P. 14 (b), as amended, 378 Mass. 939 (1979),[4] there is a strong sense that rules of procedure ought to be followed and a concern for the "significance of timely docketing." *Ingersoll Grove Nursing Home, Inc.* v. *Springfield Gas Light Co.,* 7 Mass. App. Ct. 864 (1979) ("Failure properly to docket an appeal in accordance with Mass. R. A. P. 10 [a] is ground for dismissal of an appeal").

The Appeals Court did not dismiss the plaintiffs' appeal on motion by the defendant; rather, it refused to consider an appeal that was not properly before it. In so doing, it was enforcing the letter and intent of the rules of appellate procedure. It could not seriously be contended that, when faced with such a clear violation of the rules, an appellate court would be without authority to apply sanctions, including that of refusing to consider the appeal. Of course, the Appeals Court as well as this court has discretion to grant or deny the plaintiffs' motion for an enlargement of time to docket their appeal. Mass. R. A. P. 3 (a), as amended, 378 Mass. 927 (1979). Mass. R. A. P. 14 (b). See *Tammaro* v. *Colarusso,* 11 Mass. App. Ct. 44, 48-49 (1980). However, the plaintiffs' motion was not filed until two weeks after the Appeals Court issued its decision. Less than three weeks later, this court allowed the plaintiffs' application for further appellate review. As a result, the Appeals Court never acted on the motion. We are therefore confronted with a motion which has not been acted on by any lower court. The purpose of this motion, filed after the decision by the Appeals Court, was to correct an oversight in the docketing procedure as to a claim of appeal filed nearly two years previously. Under these circumstances we decline to exercise our discretion in favor of the motion and therefore we deny it.

---

[4] "The appellate court or a single justice for good cause shown may upon motion enlarge the time prescribed by these rules or by its order for doing any act, or may permit an act to be done after the expiration of such time . . . ."

2. *Assignment.* The interpretation of the assignment is the essence of this appeal. The problem is to determine precisely what the sellers meant to assign to the plaintiffs when they purchased the property.

The defendant argues correctly that the plaintiffs did not have ownership rights in the property prior to the conveyance of title. They had no valid claim in tort for injury to the property on the basis of the execution of the purchase and sale agreement. *Laurin* v. *DeCarolis Constr. Co.*, 372 Mass. 688, 690-691 (1977). If they are to recover for an injury that occurred before they took title it must be on the basis of the assignment. What the sellers assigned was "any and all claims, demands, and cause or causes of action whatsoever, which we have had or now have, or may have, against Potvin Lumber Company, Inc. of Stamford, Vermont, by reason of the written contract between the assignors and said Potvin Lumber Company, Inc." The Appeals Court concluded that, because there was no explicit reference in the assignment to a cause of action in tort, the plaintiffs could not recover for a violation of G. L. c. 242, § 7. We do not agree.

There is no general obstacle in principle to the assignment of a cause of action for tort. Claims for injury to property interests are clearly assignable. *Bethlehem Fabricators, Inc.* v. *H.D. Watts Co.*, 286 Mass. 556, 566-567 (1934). The cases cited by the defendant, *Putnam* v. *Savage*, 244 Mass. 83 (1923), and *Little* v. *Conant*, 2 Pick. 527 (1824), concern the survivability, not the assignability, of a cause of action in tort. It is also clear that a claim in tort may arise out of a contractual relationship. *Rae* v. *Air-Speed, Inc.*, 386 Mass. 187, 192 (1982) (action in tort stemming from the failure of an insurance agent property to obtain insurance coverage). *Abrams* v. *Factory Mut. Liab. Ins. Co.*, 298 Mass. 141, 144 (1937) ("Although the duty arises out of the contract and is measured by its terms, negligence in the manner of performing that duty as distinguished from mere failure to perform it, causing damage, is a tort").[5]

---

[5] It might be argued that this wrongful cutting did not actually arise out of the contractual relationship because it was outside the scope of the con-

Since it is clear that assignment of the cause of action under G. L. c. 242, § 7, *could* have been made, the question is whether in fact it was made. This assignment is a contract; therefore "[w]hen . . . the words [of a contract] are plain and free from ambiguity they must be construed in their usual and ordinary sense." *Sherman* v. *Employers' Liab. Assurance Corp.*, 343 Mass. 354, 356 (1961).

The significant words of this assignment are "all claims . . . and . . . causes of action . . . *by reason of* the written contract" (emphasis added). The Appeals Court found this language "by its terms referred only to the assignment of rights *under* the contract" (emphasis added). *Larabee* v. *Potvin Lumber Co., supra* at 228. Taking the words in their "usual and ordinary sense," we find that a grant of rights "by reason of" a contract is broader than the grant of rights "under" a contract. Similarly broad language was used in an assignment in *Commonwealth* v. *Market Warehouse Co.*, 250 Mass. 449 (1925). In that case the court allowed an assignee to recover in tort for damage to some bales of wool. The owner of the wool had assigned to the plaintiff "any and all claims, demands and causes of action whatsoever which it might have against . . . [the defendant] for violation of any obligation or duty arising from or relating to said bales of wool." *Id.* at 451. The language in the instant case encompasses an equally broad grant of rights. "Arising under" implies that the cause of action must be directly connected to the underlying contract. "By reason of" includes peripheral rights which are related or connected to the contract in a less immediate way.

Furthermore, there is no evidence, either in the assignment document itself, or in any of the other documents arising out of this transaction, to suggest the sellers meant to reserve any rights for themselves. There can be no question

tract. The assignment does not cover claims that are outside the scope of the contract. In this case, however, it is clear that this tortious cutting would not have occurred had it not been for the contract. Furthermore, it is not unreasonable to interpret an assignment of rights "under the contract" as referring to rights and claims created by a breach of that contract.

that a cause of action in tort is a "claim," and without some reservation in the document itself or some indication from the circumstances, there is no reason to assume that the assignors meant to limit the rights they were assigning to the plaintiffs. In fact, every indication from the language of the assignment is that the sellers meant to divest themselves completely of their entire interest in the property. Moreover the defendant fails to advance any reason why the sellers would want to assign only part of the claim or to offer any explanation as to what the purpose would be for any such partial assignment.

Another jurisdiction has stated that an unqualified assignment of a contract or chose in action "vests in the assignee the assigned contract or chose and all rights and remedies incidental thereto. There incidental rights include certain ancillary causes of action arising out of the subject of the assignment and accruing before the assignment is made." *Chatten* v. *Martell*, 166 Cal. App. 2d 545, 551-552 (1958). Absent any indication by the sellers to the contrary, therefore, we find that the phrase "all claims . . . by reason of the written contract" includes a cause of action in tort for the wrongful cutting of trees on property subsequently sold to the plaintiffs.

3. *The alleged errors of the trial court.* Since the Appeals Court found the assignment did not give the plaintiffs standing to sue in tort, it did not reach the claims of the defendant that the trial judge had erred (1) in finding that the defendants had cut trees in violation of G. L. c. 242, § 7, and (2) in accepting the plaintiffs' testimony as to the value of the property when he assessed damages. We address those claims now.

a. *The violation of G. L. c. 242, § 7.* The trial judge found that the defendant had wilfully and without license cut down trees on land belonging to the plaintiffs or their assignors. This finding is based on a conclusion that the contract between Potvin and the plaintiffs' predecessors in interest did not authorize a cutting of trees as extensive as that performed by Potvin. The contract specified that Potvin

was to cut only those trees marked with red paint. Potvin could cut unmarked trees only as necessary to make roadways for its machinery and to facilitate the removal of timber. The judge found that Potvin cut more unmarked trees than were necessary and permitted by the contract. This was a finding of fact, and may not be disturbed unless it is "plainly wrong." *Smith* v. *Board of Appeals of Brookline*, 366 Mass. 197, 200 (1974). On the evidence, the judge was not plainly wrong in finding that Potvin cut more trees than were necessary for the construction of roadways or the safe removal of marked timber. Likewise, we will not disturb the judge's finding that the defendant did not have good reason to believe it was lawfully authorized to cut the unmarked trees in issue.

b. *The value of the property.* The amount of damages provided by G. L. c. 242, § 7, for the wrongful cutting of trees is "three times the amount of the damages assessed therefor."[6] The statute does not prescribe how the damages shall be measured. One measure is the value of the timber which has been wrongfully cut. Another is the diminution in the value of the property as a result of the cutting. *Davenport* v. *Haskell*, 293 Mass. 454 (1936). The plaintiff can opt for either measure. *Lawrence* v. *O'Neill*, 317 Mass. 393, 397 (1944). Here the plaintiffs chose the latter. The judge calculated the diminution in value by subtracting the value of the property after the cutting (estimated by the plaintiffs at $30,000) from the purchase price ($39,000). An owner of property familiar with it and its uses and characteristics may testify as to its value. *Rubin* v. *Arlington*, 327 Mass. 382, 384 (1951). Evaluation of the witness' familiarity, knowledge, and experience is for the trial judge and his decision is "conclusive unless upon the evidence it [is] erroneous as matter of law." *Id.* The judge's assessment of the plaintiffs' qualifications to testify on this issue was not incorrect as a matter of law.

Therefore we affirm the judgment of the Superior Court.

*So ordered.*

---

[6] If the defendant reasonably thought he was authorized to cut the trees, he shall be liable for single damages only. G. L. c. 242, § 7.