ELIOT DISCOUNT CORPORATION *vs.* FRANCIS W. DAME,
individually and as trustee, & another.[1]

Suffolk.   December 14, 1984. — January 29, 1985.

Present: KASS, CUTTER, & FINE, JJ.

*Fraudulent Conveyance.   Evidence,* Presumptions and burden of proof.

In a creditor's action to have set aside as fraudulent a conveyance of real
   estate, the burden was upon the plaintiff to prove that the grantor was
   insolvent at the time of the conveyance or that the conveyance rendered
   him insolvent, and the plaintiff was not entitled to prevail merely by
   showing that the conveyance had been upon inadequate consideration
   after the grantor had incurred indebtedness by signing a certain note as
   coguarantor. [282-286]

CIVIL ACTION commenced in the Land Court Department
on January 13, 1983.

The case was heard by *William I. Randall, J.*

*Leon M. Fox (Carmine L. Gentile* with him) for the plaintiff.
*John J. Ruby, Jr.,* for Ann Milroy.
*Thomas F. Broderick* for Francis W. Dame.

FINE, J.   The plaintiff, Eliot Discount Corporation (Eliot
Discount), brought this action seeking to have a conveyance
of certain real estate set aside as a fraudulent transaction under
G. L. c. 109A, the Uniform Fraudulent Conveyance Act. The
conveyance was made in July of 1972 by one defendant, Francis
W. Dame, to himself and another defendant, Ann Milroy, as
trustees of the Dame Realty Trust.[2] The case was tried before
a judge in the Land Court. At the close of the plaintiff's case,

---

[1] Ann Milroy, trustee. Both defendants were trustees of the Dame Realty
Trust. Ann Milroy was also trustee of the Milroy Family Trust.

[2] In September, 1979, Dame conveyed his interest to Ann Milroy, as
trustee of the Milroy Family Trust.

each defendant made an oral motion for a directed verdict.[3]
No action was taken on the motions, and the defendants were
invited to present evidence. Both defendants rested without
doing so. The judge, in his decision, considered the plaintiff's
evidence in light of each of the four separate sections of G. L.
c. 109A relied upon by the plaintiff and ruled in favor of the
defendants as to each section.

The judge found the relevant facts to be as follows. At some
time prior to 1972, Cafe 553, Inc., became indebted to Eliot
Discount.[4] On February 3, 1971, Cafe 553, Inc., was dis-
solved.[5] On April 10, 1972, a promissory note in the amount
of $31,000, representing the prior indebtedness of Cafe 553,
Inc., to Eliot Discount, was signed on behalf of Cafe 553,
Inc. The note was secured by property and capital stock of
Cafe 553, Inc. At some time Dame had been employed as a
bartender at the café which had been operated by Cafe 553,
Inc. He and another individual signed the note as guarantors.
Payments on the note were due at the rate of $150 per month
and were made sporadically through November, 1974. On
January 19, 1982, based upon Dame's signature as guarantor,
Eliot Discount obtained an execution on a judgment against
him in the amount of $57,106.38. The real estate, which is
the subject of the present controversy, had been purchased by
Dame in 1969. The transfer in July of 1972 of this property
to himself and Milroy as trustees was made for a nominal
consideration. Milroy and Dame were not related. A sheriff's
sale was held on April 2, 1982, at which Eliot Discount pur-
chased the premises for $30,581.85.

The judge ruled that Dame's contingent liability on the note
constituted a "debt" within the meaning of G. L. c. 109A,

---

[3] We construe them as motions for dismissal under Mass.R.Civ.P.
41(b)(2), 365 Mass. 804 (1974).

[4] No evidence was presented at the trial as to the identity of the officers
or principals of Cafe 553, Inc.

[5] The corporation was dissolved by decree of the Supreme Judicial Court.
See G. L. c. 156B, § 101. There is no indication that any of the parties
were aware of the dissolution.

§ 1,[6] and that the conveyance was made without "fair consideration" within § 3. The judge ruled, correctly, that there was no evidence of Dame's state of mind or intent at the time of the transfer, or that Dame was engaged in, or about to engage in, any business or transaction that would justify setting aside the conveyance under G. L. c. 109A, § 5, § 6 or § 7.[7]

The only issue of consequence in this appeal arises under G. L. c. 109A, § 4, which provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Insolvency, for these purposes, is defined in § 2(1) as follows: "A person is insolvent within the meaning of this chapter when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Relying on *Kerrigan* v. *Fortunato,* 304 Mass. 617, 620 (1939), the judge ruled that the plaintiff, Eliot Discount, had the burden of proving either that the conveyance was made while Dame was insolvent or that the conveyance rendered him insolvent. No evidence of Dame's financial condition having been introduced, the judge

---

[6] General Laws c. 109A, § 1, defines "debt" to include "any legal liability, whether matured or unmatured, liquidated or unliquidated, absolute, fixed or contingent."

[7] General Laws c. 109A, § 5, provides: "Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction, for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors and as to other persons who become creditors during the continuance of such business or transaction, without regard to his actual intent."

General Laws c. 109A, § 6, provides: "Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature is fraudulent as to both present and future creditors."

General Laws c. 109A, § 7, provides: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors."

ruled that the plaintiff's burden had not been met, and, consequently, he entered judgment for the defendants. We agree with the judge's conclusion, and, therefore, we affirm.

The *Kerrigan* case was presented to the Supreme Judicial Court in the same posture with respect to the claim of a creditor under G. L. c. 109A, § 4, as that in which the instant case has been presented to us. The plaintiff in *Kerrigan* rested his case after presenting evidence of a debt and transfers of real property without payment for the fair monetary value of the property. The defendant rested his case without presenting any evidence. *Id.* at 618-619. The court said: "It does not appear that when the conveyances were made, 'the present fair salable value of his [the defendant's] assets . . . [was] less than the amount that . . . [would] be required to pay his probable liability on his existing debts as they became absolute and matured,' and hence it cannot be said to have been proved that he was then insolvent within the meaning of G. L. (Ter. Ed.) c. 109A, § 2(1). The evidence is not sufficient to show that by the conveyances the defendant . . . was rendered insolvent as to creditors, without regard to his actual intent, within the provisions of § 4 . . . ." *Id.* at 620-621. See also *Massachusetts Elec. Co.* v. *Pacific Natl. Inv. Corp.,* 9 Mass. App. Ct. 752 (1980).

Eliot Discount argues that it has met its burden under § 4 by proving that the conveyance was made upon inadequate consideration after Dame incurred the indebtedness. In that situation, Eliot Discount argues, a presumption of insolvency arises, placing on the defendants the burden of producing evidence of Dame's solvency at the time of the transfer. If that argument is sound, then Eliot Discount should have prevailed, since the defendants rested without offering any evidence. Eliot Discount attempts to distinguish the *Kerrigan* case on the ground that the conveyance in that case involved a husband and wife and a tenancy by the entirety. See *Kerrigan* v. *Fortunato,* 304 Mass. at 619, 620. Although we fail to appreciate the significance of that distinction, we think that there is at least a plausible rationale for the proposition urged by Eliot Discount in that Dame is obviously the party most familiar with

his own financial situation, and the facts regarding that issue are probably more readily available to him than to Eliot Discount. Such considerations have, on occasion, been viewed as significant for the purpose of allocating the burden of producing evidence. See *William Rodman & Sons* v. *State Tax Commn.,* 373 Mass. 606, 611 (1977); *Moore* v. *New York, N.H. & H.R.R.,* 173 Mass. 335, 337 (1899); 9 Wigmore, Evidence § 2486, at 290-291 (Chadbourn rev. 1981).

The issue of the proper allocation of the burden of production is not one that was pressed by the plaintiff in the *Kerrigan* case, or by the plaintiff in the *Massachusetts Elec. Co.* case, which followed it. Because we regard the issue as one of significance to those engaged in conducting financial transactions, we have examined the authorities to see whether, during the forty-five years since the *Kerrigan* case was decided, its force has been eroded. We note that G. L. c. 109A follows the Uniform Fraudulent Conveyance Act, which has been adopted by twenty-six States. Section 12 of that act requires that it be "interpreted and construed [so] as to effectuate its general purpose to make uniform the law of those states which enact it." This statutory exhortation, however, has been to no avail on the issue at hand. The States are sharply divided as to the party on whom to place the burden of proving solvency or insolvency.[8] Therefore, the desirability of consistency among the States is not a factor which can influence our decision.

We reject the argument of Eliot Discount on the ground that the rule in the *Kerrigan* case conforms generally to at least two

---

[8] The following States which have enacted the uniform act place the burden of proof on the plaintiff creditor to show insolvency: Minnesota, see *Neubauer* v. *Cloutier,* 265 Minn. 539 (1963); Nevada, see *Matusik* v. *Large,* 85 Nev. 202 (1969); New Jersey, see *Johnson* v. *Lentini,* 66 N.J. Super. 398, 404 (1961); South Dakota, see *Smith* v. *Poppen,* 57 S.D. 25, 32 (1930); and Wisconsin, see *Miller* v. *Lange,* 234 Wis. 460, 465 (1940). Those states which create a presumption of insolvency once the plaintiff shows that the transfer of property was made for less than fair consideration when debts were outstanding include Maryland, see *Lacey* v. *Van Royen,* 259 Md. 80, 92-94 (1970); New York, see *Matter of Tabala,* 11 Bankr. 405, 408-409 (S.D. N.Y. 1981); Ohio, see *Cellar Lumber Co.* v. *Holley,* 9 Ohio App. 2d 288, 293-294 (1967); and Pennsylvania, see *First Natl. Bank* v. *Hoffines,* 429 Pa. 109, 114 (1968).

consistent threads in Massachusetts law regarding burden of proof and presumptions. First, the burden of producing evidence is usually placed upon the party who is trying to show that which is not normal, customary, honest, or regular. See *Epstein* v. *Boston Housing Authy.*, 317 Mass. 297, 301 (1944), and cases cited; Liacos, Massachusetts Evidence 41, 51-60 (5th ed. 1981). Although we are in an era of widespread home financing, consumer credit, and student loans, the condition of solvency, we think, remains more normal, or more likely, than the condition of insolvency.

Second, a party making a claim and seeking to alter the status quo to another party's disadvantage usually has the burden of proving all of the elements of his claim. See Liacos, *supra* at 41. Specifically, a party making a claim under a statute usually bears the burden of proving that he comes within the terms of the statute. *Sullivan* v. *Quinlivan*, 308 Mass. 339, 342 (1941). In *Treasurer & Recr. Gen.* v. *Cunniff*, 357 Mass. 206, 207 (1970), the plaintiff sought, under G. L. c. 123, § 96 (now c. 123, § 32), to recover payment from a husband for care provided over a lengthy period for support of the man's wife in a State mental hospital. The statute provided for such recovery when there was "sufficient ability" to pay for such support. *Id.* at 208. The plaintiff proved that the husband owned real estate and stock in a corporation bearing his name, but not the value of those holdings. The plaintiff was denied the relief sought because of the absence of the requisite proof. *Id.* That case was one in which the public interest favoring the plaintiff's claim was strong. If control over the relevant financial information and ease of proof were to be regarded as decisive factors in allocating the burden of production, the burden in that case would have shifted to the defendant. When the Legislature enacting a statute intends to shift a burden of producing evidence or to create a presumption it knows how to do so explicitly. See, e.g., G. L. c. 32, § 94A (presumption regarding disability or death of fire fighter caused by respiratory disease); G. L. c. 194, § 16 (presumption regarding existence of heirs for purposes of administration of estates).

The present case is not one in which considerations of fairness require a different result. The original note signed by Dame as a guarantor was not given in exchange for a new loan but only in recognition of past indebtedness. Payments were being made on the note at the time of the challenged conveyance. Since the note was secured by property of the corporation and Dame was not the only guarantor, in July of 1972 Dame could have expected the creditor to look elsewhere for payment. Eliot Discount is not without a remedy at the present time. It has obtained and may enforce a judgment against Dame in the amount of $57,106.38. All that we hold in this case is that Eliot Discount may not alter the status quo in such a way as to deprive Milroy, who is not the debtor and is now the sole trustee of the real estate, of ownership and possession of the property.

*Judgment affirmed.*