**In re Daniel W. BROUILLET and Peggy Brouillet, Debtors.**

**MERCHANTS NATIONAL BANK, Appellant,**

v.

**Daniel W. BROUILLET and Peggy Brouillet, Appellees.**

**Civ. A. No. 91–40069–XX.**

United States District Court, D. Massachusetts.

Jan. 23, 1992.

Russell S. Chernin, Worcester, Mass., for Daniel W. and Peggy Brouillet.

Jonathan David Yellin, Kaye, Fialkow, Richmond & Rothstein, Boston, Mass., for Merchants Nat. Bank.

## MEMORANDUM AND RULING ON APPEAL FROM ORDER OF BANKRUPTCY COURT

SKINNER, District Judge.

The debtors, Daniel W. Brouillet and Peggy Brouillet, converted approximately $100,000 in accounts receivable, in which the Merchants National Bank ("the bank") had a security interest, for the purpose of paying employee wages, income taxes, and other bills prior to the failure of the debtors' business. The bankruptcy court discharged the debt, finding that the debtors did not willfully and maliciously injure the bank's property within the meaning of 11 U.S.C. § 523(a)(6). 125 B.R. 341. The bank appeals the court's order on grounds that it applied an incorrect legal standard in its search for malice and that its finding of an absence of malice as a matter of fact was clearly erroneous.

*Background*

The bankruptcy court's findings of fact are supported by ample evidence from the record and I will not disturb them. The Brouillets operated a construction business known as Central Mass Drywall. They had a loan arrangement with the bank under which the business could borrow up to a certain percentage of current accounts receivable, up to a maximum of $350,000, and the bank would have a security interest in the accounts receivable.

The construction business began to experience difficulties in 1989 and the bank hired a "work-out" consultant to monitor the loan. The bank nevertheless additionally advanced the Brouillets nearly $40,000 in October, 1989, which brought the total debt over the maximum amount permissible under the agreement. The debtors met with two bank officers and the work-out consultant in late October to discuss the status of the loans. The meeting was inconclusive. The debtors had formulated no intent to harm the bank or to close their business at that time.

The Brouillets requested additional loans from the bank, to which the bank did not promptly respond. The Brouillets concluded that the bank would probably not advance the failing business any more cash. They consulted a lawyer and were advised of the importance of paying taxes in order to satisfy their personal liability. On November 6, 1989, the business received customer payments totaling $103,677 in which the bank had a security interest. The Brouillets opened an account at another bank, cashed the checks, and paid out substantially all of the money as follows: some $50,000 in payroll wages to their employees, $5,000 in payroll taxes, and $45,-000 in bills to subcontractors. They paid the remaining $2,945.05 to the bank and ceased doing business as Central Mass Drywall. They understood at the time they created a new bank account that the business was contractually obligated to deposit the payments with the appellant bank.

The bankruptcy judge performed a factual review of many of the leading cases and concluded that although courts profess to apply other standards, "[T]he word 'malicious' in § 523(a)(6) requires some judgment on the part of the fact finder concern-

ing the degree of immorality of a debtor's conduct." Quoting a leading proponent of the "legal realist" philosophy, the court stated, "'formal law frequently conceals what judges do in fact and what makes them do it.' Frank, *What Courts do In Fact*, 26 Ill.L.Rev. 645, 622 (1932)." In a final and dispositive paragraph, the court stated, "In the present case, the Debtors' primary motivation was to avoid harm to other creditors rather than to do damage to the Bank. That is not malicious." The only colorable issue on appeal is whether the court applied a permissible legal standard in finding an absence of malice under § 523(a)(6).

*Discussion*

The Bankruptcy Code provides:

A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity

.    .    .    .    .

11 U.S.C. § 523(a)(6). The bankruptcy court found that the Brouillets willfully caused injury to the bank's property, but that they did not do so maliciously.

The Supreme Court has spoken twice on the "willful and malicious" standard as applied to § 17(a)(2) of the Bankruptcy Act, the pre–1978 predecessor of § 523(a)(6) of the current Bankruptcy Code. In *Tinker v. Colwell*, 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904), the Court found that a debt for damages arising from the judgment debtor's "criminal conversation" with the judgment creditor's wife would not be discharged. The Court stated that the debtor's act was

a willful disregard of what [he knew] to be his duty, an act which [was] against good morals and wrongful in and of it-

self, and which necessarily cause[d] injury and [was] done intentionally.

*Id.* at 487, 24 S.Ct. at 509.

In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934), the Court held that an automobile dealer who customarily borrowed money from a lender in order to purchase his automobiles had technically converted the lender's proceeds, but there was no implied malice where the dealer went into bankruptcy and failed to pay his debt to the lender. The Court stated,

[A] willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances ... There may be an honest, but mistaken belief, engendered in the course of dealing, that powers have been enlarged or incapacities removed.

*Id.* at 332, 55 S.Ct. 151.

The First Circuit applied *Tinker* and *Davis* to a bankruptcy appeal under § 17(a)(2) of the Act in *In re Nance*, 556 F.2d 602 (1st Cir.1977). The Court held that there was implied malice in the debtor's conversion of $24,000 which he had previously earned as a professional football player and assigned to a lender. The court cited *Bennett v. W.T. Grant Co.*, 481 F.2d 664 (4th Cir.1973) for the governing legal standard for malice in cases of a debtor's conversion of funds subject to a security interest of a lender:

There need be no showing of 'special malice' toward the injured party, only that the act 'is done deliberately and intentionally in knowing disregard of the rights of another.'

*Id.*, 556 F.2d at 611 (citing *Bennett*, 481 F.2d at 665). The first circuit's standard for malice was not affected by the adoption of the Bankruptcy Code, thus *Nance* remains good law.[1]

Other circuit courts have announced similar standards with respect to a finding of implied malice for willful acts of conver-

---

1. This is so, notwithstanding Congress' specific overruling of a broad reading of the "willful" standard and Congress' failure to specifically use the term "conversion" in the text of the Code. *See, e.g., St. Paul Fire and Marine Insur-* *ance Co. v. Vaughn*, 779 F.2d 1003, 1008–10 (4th Cir.1985) (reaffirming *Bennett, supra,* based on legislative history of the Code); *In re Contento,* 37 B.R. 853 (Bankr.S.D.N.Y.1984); 3 *Collier on Bankruptcy,* ¶ 523.16[3] at 523–136.

sion. *See In re Cecchini*, 780 F.2d 1440, 1443 (9th Cir.1986) ("When a wrongful act such as conversion, done intentionally, necessarily produces harm and is without just cause or excuse, it is 'willful and malicious' even absent a specific intent to injure."); *In re Long*, 774 F.2d 875, 881 (8th Cir.1985) ("When transfers in breach of security agreements are in issue, we believe nondischargeability turns on whether the conduct is (1) headstrong and knowing ("willful") and, (2) targeted at the creditor ("malicious"), at least in the sense that the conduct is certain or almost certain to cause financial harm."); *In re Posta*, 866 F.2d 364, 367 (10th Cir.1989) ("[T]he focus of the 'malicious' inquiry is on the debtor's actual knowledge or the reasonable foreseeability that his conduct will result in injury to the creditor, not on the abstract and perhaps moralistic notions of 'wrongfulness' of the debtor's act" (citation omitted)).

Each circuit considered and rejected any requirement for a finding of actual, subjective malice on the debtor's part, in the sense that the debtor intended to do harm to the creditor. *See Nance*, 556 F.2d at 611, *Cecchini*, 780 F.2d at 1443; *Long*, 774 F.2d at 881; *Posta*, 866 F.2d at 367. *See also* 3 *Collier on Bankruptcy*, ¶ 523.16[1] at 523–129 (15th ed. 1991) ("An injury to an entity or property may be a malicious injury within this provision if it was wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will.").

 Here, the bankruptcy court applied a standard for malice which included an inquiry into the degree of immorality of the debtors' conduct and debtors' motivation to do the bank harm. Upon finding that a conversion had taken place, the bankruptcy court erred in applying this actual, rather than implied, standard for malice. Under *Nance, supra*, I rule that because the conversion was "done deliberately and intentionally in knowing disregard of the rights of another," *Id.*, 556 F.2d at 611, and because the *Davis* exception for an act of mistaken or technical conversion does not apply, the appellees' conversion of the payments was a "willful and malicious"

injury to the bank's property. The debtors are not entitled to reorder the priorities of debt upon insolvency, no matter what their motives. In my opinion the obligation to repay the converted proceeds is nondischargeable under 11 U.S.C. 523(a)(6).

*Reversed.*