In re Paul H. SULLIVAN, Debtor.

Lawrence and Susan BAIRSTOW,
Plaintiffs,

v.

Paul Harold SULLIVAN, Defendant.

Bankruptcy No. 94–44190–JFQ.
Adversary No. 95–4005.

United States Bankruptcy Court,
D. Massachusetts.

July 23, 1996.

Robert R. White, Lowell, MA, for Susan
Bairstow.

Arthur C. Sullivan, Field, Hurley, Webb & Sullivan, Jr., Lowell, MA, for Paul H. Sullivan.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Before the court is the plaintiffs' motion for partial summary judgment and the defendant's objection thereto. At issue, among other things, is what conduct rises to the level of "willful and malicious" so as to render resulting debt nondischargeable pursuant to section 523(a)(6), and whether a state court judgment against a debtor, based at least in part on a theory of vicarious liability, has issue preclusion effect here. For reasons which follow, the plaintiffs' motion is granted.

### I. FACTS

The salient facts are not at issue. On November 3, 1989, Lawrence and Susan Bairstow (the "Plaintiffs") filed suit in Massachusetts Superior Court against the Debtor Paul Sullivan (the "Debtor"), individually and as trustee of the Catamount Realty Trust. The Plaintiffs alleged the Debtor trespassed upon their property, willfully cut down and removed trees and shrubs, removed land, and was engaging in a continuing trespass. The court ordered a bifurcated trial with the issue of liability proceeding first. This was submitted to a jury on special questions on February 24, 1992.

The special questions presented to the jury were as follows:

1. Did the [Debtor], his agents, employees or anyone at his direction trespass upon the property of the plaintiffs?

2(A). Did the [Debtor], his agents, employees or anyone at his direction without license willfully cut down ... trees, timber, wood or underwood on the land of the plaintiffs?

The answer to both questions was yes.

2(B). If the answer to Question 2A is "Yes" did the [Debtor] have "good reason to believe that the land on which the trespass was committed was his own or that he [or they] were otherwise lawfully authorized to do the acts complained of?"

The answer was no.

There was a separate trial on the issue of damages. On March 26, 1992, a second jury returned a verdict for the Plaintiffs, awarding them $22,101.00. Of that award, $16,800 represented damages for the trees, timber, woods or underwood which was cut down. The court entered judgment and trebled that portion of the damages pursuant to Massachusetts General Laws chapter 242 section 7, which provides:

> A person who without license wilfully cuts down, carries away, girdles or otherwise destroys trees, timber, wood or underwood on the land of another shall be liable to the owner in tort for three times the amount of the damages assessed therefor; but if it is found that the defendant had good reason to believe that the land on which the trespass was committed was his own or that he was otherwise lawfully authorized to do the acts complained of, he shall be liable for single damages only.[1]

Accordingly, judgment entered against the Debtor on March 26, 1992 in the sum of $55,610.00, plus prejudgment interest of $16,016.00. The Debtor appealed, and the Appeals Court affirmed the judgment on May 4, 1993. The Debtor's request for further appellate review was denied.

According to the Plaintiffs, the Debtor has made no attempt to pay any portion of this judgment. The Debtor filed a petition under chapter 13 of the Bankruptcy Code on April 21, 1994, in the midst of collection procedures by the Plaintiffs. The petition did not include the Plaintiffs as creditors or disclose a pending fraudulent transfer action commenced by the Plaintiffs. That case was dismissed on July 18, 1994. On September 20, 1994, during further collection efforts, the Debtor filed the present chapter 7 proceeding. Again, the Plaintiffs' status as creditors and the fraudulent transfer action were not disclosed.

The trespass was incidental to construction on the Debtor's property by his workcrew.

---

1. MASS.GEN.L. ch. 242 § 7 (1986).

The work took place over several months. According to testimony by John Sullivan, the Debtor's brother and site supervisor of the project, the propriety of the workcrew's conduct, including removing the trees, was called into question on the first day of the job by the Plaintiff Susan Bairstow. Upon review of the portion of the transcript of the trial submitted into evidence, and as stated at the hearing on this motion, it does not appear that the Debtor himself performed any of the conduct at issue.

The complaint contains two counts, one objecting to discharge and one requesting that the judgment debt be declared nondischargeable. The Plaintiffs move for summary judgment regarding the nondischargeability count. Summary judgment is to be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issues as to any material facts and that the moving party is entitled to judgment as a matter of law."[2]

## II. DOES THE SUPERIOR COURT JUDGMENT HAVE COLLATERAL ESTOPPEL EFFECT IN THIS NON-DISCHARGEABILITY PROCEEDING?

■■■ The Plaintiffs contend the conduct proved at the trial establishes, under the doctrine of collateral estoppel, that the judgment should be declared nondischargeable as a debt for willful and malicious injury within the meaning of 11 U.S.C. section 523(a)(6). Collateral estoppel, if applicable, will prevent a party from relitigating a factual issue which has already been actually and necessarily litigated, and finally determined, in a prior

action.[3] For the doctrine to be applicable, the following requirements must be met: (1) the precise issue sought to be precluded was raised in a prior proceeding; (2) the issue was actually litigated; (3) the determination of the issue must have been essential to the final judgment in the prior proceeding; and (4) the party against whom estoppel is sought must have been fully represented in the prior action.[4] Collateral estoppel is applicable in proceedings to determine the dischargeability of a debt pursuant to 11 U.S.C. section 523.[5]

1. *Absent the vicarious liability question, does the conduct for which the Plaintiffs were awarded damages rise to the level of "willful and malicious injury"?*

11 U.S.C. section 523 provides, in relevant part:

> (a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.[6]

■■■ The Code does not define the terms "willful" or "malicious". Conduct is "willful" if it is deliberate or intentional.[7] Negligent or reckless conduct is excluded from the scope of the statute. There appears to be no dispute that the conduct at issue was willful.

Interpretation of the "malice" requirement is not as simple. Two conflicting theories have emerged.[8] The first, labeled the "specific intent" theory, requires that a creditor prove the debtor's motive was to harm the

---

**2.** FED.R.BANKR P. 7056(c); *Celotex Corp v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**3.** *E.g., Brzys v. Lubanski (In re Lubanski)*, 186 B.R. 160 (Bankr.D.Mass.1995); *Sack v. Friedlander (In re Friedlander)*, 170 B.R. 472 (Bankr. D.Mass.1994).

**4.** *E.g., Lubanski*, 186 B.R. at 165; *Friedlander*, 170 B.R. at 476.

**5.** *Grogan v. Garner*, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 657–58 n. 11, 112 L.Ed.2d 755 (1991).

**6.** 11 U.S.C. § 523(a)(6) (1988).

**7.** *See, e.g., Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986); *Seven Elves, Inc. v. Eskenazi*, 704 F.2d 241, 245 (5th Cir.1983); *Lubanski*, 186 B.R. at 164; *Madden v. Fate (In re Fate)*, 100 B.R. 141, 143 (Bankr.D.Mass.1989); *see also* S.REP. No. 989, 95th Cong., 2d Sess. 79 (1978).

**8.** *See Lubanski*, 186 B.R. at 164–65 (collecting cases); *The Exception to Discharge for Willful and Malicious Injury: The Proper Standard for Malice*, Karen N. Fischer, 7 BANKR DEV.J. 245 (1990) (hereinafter "Fischer").

creditor or the creditor's property interest.[9] The second, labeled the "implied malice" theory, requires only that the debtor either know or be substantially certain that the act will cause injury, and proceed in disregard of that knowledge.[10] Put another way, and as explained by the court in *Brzys v. Lubanski (In re Lubanski)*, the phrase "willful and malicious" means "an act intentionally committed, without just cause or excuse, in conscious disregard of one's duty and that necessarily produces an injury."[11] The "implied malice" theory has emerged as the more popular one.[12]

Both theories suffer from the same defect: they are largely outcome-determinative. The test embodied in the specific intent theory inevitably leads to the debt being discharged, as the creditor's burden of proving the debtor's subjective intent is nearly insurmountable. The test embodied in the implied malice theory generally leads to the debt being held nondischargeable, as it is easy to meet. Indeed, most breaches of contract could fit the definition of "malice" under it.

A case example illustrates the difference between the two theories. In *Local 11500, Communications Workers of America, AFL–CIO v. Akridge (In re Akridge)*,[13] the debtor was a single mother who received no alimony and little child support. Her job required that she be a member of the plaintiff union. Before the union engaged in strike activity against her employer, the debtor informed the union she could only afford to participate in the strike for three days due to her financial hardship. When the strike began, the debtor picketed for three days and then returned to work. After the strike had ended, the union instituted an internal trial, found her guilty of violating the union's constitution and fined her about $3,000.00 for wages she earned during the strike plus damages.[14]

The debtor filed a chapter 7 petition without ever paying the fine. The union sought to have the debt declared nondischargeable under 11 U.S.C. section 523(a)(6). The bankruptcy court granted the debtor's motion for summary judgment and imposed sanctions upon the Union for bringing the adversary proceeding. On appeal, the Bankruptcy Appellate Panel agreed that sanctions were appropriate because the proceeding was not warranted by existing law and had been brought to harass the debtor.[15] The court required the debtor to be motivated by an intent to harm. The court stated "[i]t is clear that the debtor's reasons for breaching the contract with the Union were purely due to her financial condition and that of her children."[16]

The result achieved in *Akridge* seems correct. However, there will be very few cases where a creditor can prove the act was motivated by a intent to harm the creditor or damage his property. In the present case, it has not been argued the Debtor had that motive. Many debtors less sympathetic than the one in *Akridge* would prevail through use of the "specific intent" test.

Now examine the *Akridge* situation under the "implied malice" standard. The debtor certainly meant the union no harm—she was only trying to support her family. However, she must have been aware that crossing the picket line would harm the union by weakening its stand. She proceeded in disregard of that knowledge. Perhaps a court would con-

9. *See, e.g.* Dorr, Bantley & Pecha, CPA's. *P.C. v. Pasek (In re Pasek)*, 983 F.2d 1524, 1527 (10th Cir.1993); *Communications Workers of Am. v. Akridge (In re Akridge)*, 89 B.R. 66 (9th Cir. BAP 1988); *Baker v. Tadych (In re Tadych)*, 89 B.R. 785 (Bankr.E.D.Wis.1988); *Moribondo v. Lane (In re Lane)*, 76 B.R. 1016, 1023 (Bankr.E.D.Pa. 1987).

10. *See, e.g., Vulcan Coals, Inc. v. Howard*, 946 F.2d 1226, 1228–29 (6th Cir.1991); *Lubanski*, 186 B.R. at 165; *Fate*, 100 B.R. at 143; *Austin Mut. Ins. Co. v. Schultz (In re Schultz)*, 89 B.R. 28, 29 (Bankr.E.D.Wis.1988).

11. 186 B.R. at 165.

12. *Fischer, supra* note 8, at 247. At least two bankruptcy courts in this district have adopted the theory. *See Lubanski*, 186 B.R. 160; *Fate*, 100 B.R. 141.

13. 89 B.R. 66 (9th Cir. BAP 1988).

14. *Id.* at 67.

15. *Id.* at 68.

16. *Id.*

sider her financial needs as being "just cause or excuse." But what about the debtor who sells an encumbered asset and uses the money not to. pay the secured creditor but to try to save his failing business, with the honest intention of paying the creditor as soon as possible? That debtor means no harm to his creditor. Indeed, saving a business, and keeping one's employees employed, is a noble motive. Yet all such debts would be nondischargeable under a strict interpretation of the "implied malice" theory.

Both theories also suffer from another defect, in that they are not true to the reasoning articulated in the leading Supreme Court case. In *Tinker v. Colwell*,[17] the debtor had engaged in "criminal conversation" with a married woman. The aggrieved husband received a judgment against the debtor, which he sought to have declared nondischargeable in the debtor's bankruptcy proceeding. The Court ruled the act was both willful and malicious. In so holding, it said:

> There may be cases where the act has been performed without any particular malice toward the [injured party], but we are of the opinion that, within the meaning of the exception, it is not necessary that there should be this particular, and so to speak, personal malevolence toward the [injured party], but that the act itself necessarily implies that degree of malice which is sufficient to bring the case within the exception stated in the statute ... a willful disregard of what one knows to be his duty, an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously, so as to come within the exception [contained in the statute].[18]

The Court in *Tinker* also held the debtor acted willfully when he proceeded with reckless disregard of the consequence of his actions.[19] Congress later overruled this definition of "willful"[20] but left the Court's definition of malice untouched.

It is clear from the standard quoted in *Tinker* that the debtor need not have particular malice toward the creditor. In that respect, the "implied malice" theory is correct. However, the Court required that the creditor prove more than what this theory requires. Both theories focus on the knowledge and intent of the debtor when committing the act. Yet the Court calls for an examination of the act itself:

> an act which is against good morals and wrongful in and of itself, and which necessarily causes injury and is done intentionally, may be said to be done willfully and maliciously.[21]

The Court also observed that the injury at issue, criminal conversation, was "one of the grossest which can be inflicted upon the husband, and the person who perpetrates it knows that it is an offense of the most aggravated character".[22] Clearly, no ordinary tort was involved.

Therefore, under the reasoning in *Tinker*, a debt for tortious conduct may be discharged even if the debtor acted with the knowledge the creditor would likely be harmed, because the act was not of an "aggravated" character, "against good morals" and "wrongful in and of itself."

The Court reiterated its reasoning in *Davis v. Aetna Acceptance Co.*[23] In *Davis*, the debtor, a car dealer, financed the purchase of cars for his inventory, signing a chattel mortgage and trust receipt covering the cars. According to the agreement with his lender, when the debtor sold a vehicle, he was to pay the lender the amount due from the vehicle's purchase. The debtor sold a car, notified the lender of the sale and promised to pay the amount due but never made the payment. He later filed a petition in

**17.** 193 U.S. 473, 24 S.Ct. 505, 48 L.Ed. 754 (1904).

**18.** *Id.* at 485, 487, 24 S.Ct. at 508, 509.

**19.** *Id.* at 488–90, 24 S.Ct. at 509–10.

**20.** S.Rep No. 989, 95th Cong., 2d Sess. 79 (1978) 1978 U.S.C.C.A.N. 5787.

**21.** *Tinker*, 193 U.S. at 487, 24 S.Ct. at 509.

**22.** *Tinker*, 193 U.S. at 485, 24 S.Ct. at 508.

**23.** 293 U.S. 328, 55 S.Ct. 151, 79 L.Ed. 393 (1934).

bankruptcy. The lender sought to have its debt declared nondischargeable as a willful and malicious injury.

The Court recognized a conversion had taken place, as the debtor had sold the car "out of trust", not accounting for the proceeds. But that, standing alone, was not enough to find the debt nondischargeable. According to the Court:

> a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice.[24]

The Court ruled the conversion was "without aggravated features" and was thus dischargeable.[25]

This same reasoning appears in *In re Littleton*.[26] The debtors were directors, officers and shareholders of a company which sold and serviced appliances. It had inventory financing from a commercial lending company. The debtors had guaranteed the company's debt to the lender. The lender had a security interest in both the inventory and the proceeds from the sale of that inventory, and the proceeds were to be held in a segregated account. Segregation in fact never occurred, and the lender knew this but the lender still accepted checks from the debtors. The company was current on its payments, having promptly paid for when inventory items were sold. When the company filed under chapter 11, it owed the lender $70,068.02 from the sale of inventory. The debtors filed shortly thereafter, and the lender soon brought a nondischargeability complaint. The lender contended the debtors either converted or embezzled the sales proceeds by failing to pay the lender when due. The bankruptcy court ruled the debt dischargeable and the BAP affirmed.

The Ninth Circuit in *Littleton* initially noted its prior adoption of "the concept that 'the conversion of another's property without his knowledge or consent, done intentionally and without justification and excuse, to the other's injury,' constitutes a wilful and malicious injury."[27] This statement, standing alone, is the test embodied in the implied malice theory. However, citing *Davis*, the court concluded not every disposition of collateral in violation of a security agreement creates a nondischargeable debt.[28] It agreed with the BAP decision that the act must be one which "necessarily produces harm", meaning that "the act must be targeted at the creditor, *at least in the sense that the act is certain or almost certain to cause financial harm.*"[29] Because the debtors did not retain the funds for personal gain, but instead acted in good faith with the sincere intention of keeping the business going, their actions were not those which would necessarily produce harm. The nature of the act, in other words, was not so aggravated as to render it malicious.[30]

The First Circuit in *In re Nance*[31] has similarly adhered to the complete analysis expressed in *Tinker* rather than basing its decision in reliance on the "implied malice" theory. In *Nance*, the debtor, a professional football player, had retained funds in violation of a contract under which he had assigned his future wages. In ruling the debt nondischargeable, the court stated the creditor need not prove the debtor had special malice toward it to have its debt found non-

---

**24.** *Id.* at 332, 55 S.Ct. at 153.

**25.** *Id.* at 333, 55 S.Ct. at 153–54.

**26.** 942 F.2d 551 (9th Cir.1991).

**27.** *Littleton,* 942 F.2d at 554 (quoting *In re Cecchini,* 780 F.2d 1440, 1443 (9th Cir.1986)).

**28.** *Id.* at 555.

**29.** *Id.* (quoting *In re Littleton,* 106 B.R. 632, 638 (9th Cir. BAP 1989)) (emphasis supplied by Ninth Circuit).

**30.** *Cf. In re Cecchini,* 780 F.2d 1440 (9th Cir. 1986) (debtor's conversion of funds which should have been sent to creditor hotel found malicious when conversion necessarily harmed creditor and converted funds were not used to pay other creditors in effort to reorganize business but were instead sent to partnership of which debtor was partner).

**31.** 556 F.2d 602 (1st Cir.1977).

dischargeable pursuant to section 523(a)(6).[32] But, citing *Tinker*, the court also ruled the debtor's retention of funds was "against good morals and wrongful in and of itself." [33]

In sum, a finding of "willful and malicious" conduct necessitates an inquiry by the court, *not* into the debtor's motivation, but into the degree of immorality of the debtor's conduct.[34] After making this inquiry, I hold the debtor's conduct in this case was willful and malicious within the meaning of section 523(a)(6). It was proven at the trial that agents, employees or those under the direction and control of the debtor had intentionally and deliberately trespassed upon land of the Plaintiffs and damaged their property. The conduct also contained aggravating features making it malicious. The trespass and injurious activities continued for several months after it was brought to the attention of the Debtor's workcrew a trespass existed. I therefore conclude the conduct was willful and malicious within the meaning of section 523(a)(6), and hence nondischargeable.

2. *What is the effect of the fact the Debtor's workcrew, and not the Debtor, performed the trespass?*

The Debtor contends section 523(a)(6) will not support a finding of nondischarge-

ability for damages for which he is only vicariously liable. He argues the trial merely held him legally responsible for construction which the transcript indicates was carried out by others. He points to the judge's instructions, which explicitly informed the jurors that Sullivan would be liable for the actions of employees and agents.

I have previously held, in *Piccicuto v. Rex (In re Rex),*[35] that a judgment against a debtor based on acts of an agent is not within the meaning of the exception to discharge of a debt for willful and malicious conduct. Section 523 of the Code, as a whole, is aimed at individual conduct of the debtor deemed so socially reprehensible and as to be unworthy of a discharge in bankruptcy. This is made clear by the wording of the statute itself, which requires that the action at issue be "by the debtor." [36] Therefore, a judgment based on actions for which the debtor may be legally responsible but which were not performed by the debtor is outside the scope of both the language and intent of the statute.[37] The case law is generally in agreement on this point.[38] The First Circuit has not yet ruled on the issue. Although *Rex* was reversed, the reversal was not on this point. The court of appeals there examined the record and,

---

32. *Id.* at 611.

33. *Id.*

34. But see *Merchants Nat'l Bank v. Brouillet (In re Brouillet)*, 138 B.R. 338 (D.Mass.1992) (adopting the implied malice theory). Because I sit in a multijudge district, I am not bound by the decision of a district court judge. *E.g., Cumberland Farms, Inc. v. City of Barnstable (In re Cumberland Farms, Inc.),* 175 B.R. 138, 140 n. 4 (Bankr.D.Mass.1994); *Life Ins. Co. of Virginia v. Barakat (In re Barakat),* 173 B.R. 672 (Bankr. C.D.Cal.1994); *In re Eiland,* 170 B.R. 370 (Bankr.N.D.Ill.1994); *In re Kennedy,* 158 B.R. 589 (Bankr.D.N.J.1993).

35. 150 B.R. 505 (Bankr.D.Mass.1993), *rev'd on other grounds,* 39 F.3d 37 (1st Cir.1994).

36. 11 U.S.C. § 523 (1988).

37. *Id.* at 506; *see, e.g., Thatcher v. Austin (In re Austin),* 36 B.R. 306, 312 (Bankr.M.D.Tenn. 1984) (finding that application of vicarious liabil-

ity would effectively vitiate § 523(a)(6)'s requirement that only debts resulting from willful acts committed by the debtor be nondischargeable).

38. *See, e.g., Jones v. Graham (In re Graham),* 191 B.R. 162 (Bankr.W.D.Mo.1995) (judgment debt arising from housing discrimination suit not excepted from discharge where debtor was joint owner of rental property at issue but did not herself engage in conduct which discriminated against and intended to harm potential tenant); *Giuliano v. Albano (In re Albano),* 143 B.R. 323 (Bankr.D.Conn.1992) (judgment against debtor for assault committed by bouncer who worked at debtor's restaurant not excepted from discharge); *St. Luke's Hospitals of Fargo, Inc. v. Smith (In re Smith),* 119 B.R. 714 (Bankr.D.N.D.1990) (conduct by incapacitated debtor's guardian not imputed to debtor); *Yelton v. Eggers (In re Eggers),* 51 B.R. 452 (Bankr.E.D.Tenn.1985) (parent's liability for death caused by minor's child's driving under influence not excepted from discharge); *Austin,* 36 B.R. 306 (concert promoter not denied discharge of debt arising from wrongful death caused by intoxicated patron of concert).

curiously, made a fact finding of participation on the part of the debtor.[39]

Thus, if the Debtor's judgment liability was based solely on the conduct of others, the debt would be excepted from discharge. It is true the Debtor was apparently not present when the activities occurred. However, in its answer to special question 2(B) the jury found the Debtor had no good reason to believe the Plaintiffs' land was his or that he was authorized to do the complained of acts. It is clear from this answer that the evidence convinced the jury the Debtor knew his workcrew was on land which was not his and that he had no authority for the crew's removal of the trees and other items from the land. Debts based on vicarious liability are not excepted from discharge because they are not based on deliberate and or intentional conduct by the liable party.[40] In contrast, the jury here found the Debtor knew this continuing trespass was being committed but did nothing about it. That is deliberate and intentional conduct within the scope of section 523(a)(6). Therefore, the established law regarding vicarious liability does not aid the Debtor.

### 3. Did the Plaintiffs have the burden of proof as to special question 2(B)?

The Debtor argues that by reason of a different burden of proof in the state court the Plaintiffs cannot rely here on the answer to special question 2(B). Special Question 2(B) is based on the relevant Massachusetts statute, cited above. The statute makes a party liable in tort for three times the amount of assessed damages if he "willfully" destroys trees. The statute goes on to say: "*but if it is found* that the defendant had good reason to believe that the land ... was his own or that he was otherwise lawfully authorized to do the act complained of, he shall be liable for single damages only."[41] The Debtor argues the statute shifts to him the burden of proving his good faith belief of his ownership or authorization, and that, because of this, the answer to special question 2(B) can have no issue preclusive effect here, where the Plaintiffs have the burden of proof.

The Debtor did not have the burden of proof in state court. It is true the Debtor, not the Plaintiff, was the party having the incentive to raise the issue of the Debtor's belief of ownership or authorization. With a finding of such belief, the Plaintiffs would not be entitled to treble damages. The issue, in any event was raised, perhaps by the Debtor first coming forward with evidence of his belief of ownership or authorization. The rule in Massachusetts, as elsewhere, nevertheless places the burden of proof on the plaintiff.[42] There is no intimation in the statute that the Massachusetts legislature intended to shift the burden of proof. Nor do the Massachusetts decisions suggest this.[43] At most, the Debtor had the burden of going forward, with the burden of persuasion staying with the Plaintiffs. The jury's answer to special question 2(B) does, therefore, qualify for purposes of issue preclusion.

### III. CONCLUSION

For these reasons, the Plaintiffs' motion for partial summary judgment is granted. A separate order will enter in favor of the Plaintiffs on count two of their complaint, regarding the dischargeability of the judgment debt. A pretrial will also be scheduled, at which count one of the complaint, regarding the Plaintiffs' objection to the Debtor's discharge, will be considered.

---

**39.** *Rex,* 39 F.3d at 41–42.

**40.** *Austin,* 36 B.R. at 312.

**41.** MASS.GEN.L. ch. 242 § 7 (1986) (emphasis added).

**42.** *E.g., Thompson v. Commonwealth,* 386 Mass. 811, 438 N.E.2d 33, 35 (1982) ("A person who seeks relief under a statute bears the burden of proving that his case falls within its terms."); *Sullivan v. Quinlivan,* 308 Mass. 339, 32 N.E.2d 209 (1941); *Eliot Discount Corp. v. Dame,* 19 Mass.App.Ct. 280, 473 N.E.2d 711 (1985).

**43.** *See, e.g., Larabee v. Potvin Lumber Co., Inc.,* 390 Mass. 636, 459 N.E.2d 93 (1983); *O'Malley v. R. Zoppo Co., Inc.,* 362 Mass. 568, 289 N.E.2d 890 (1972); *J. D'Amico, Inc. v. City of Boston,* 345 Mass. 218, 186 N.E.2d 716 (1962); *Moskow v. Smith,* 318 Mass. 76, 60 N.E.2d 373 (1945).